THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARTIN W. SUNDHOLM, Appellant.

Fourth Department, July 12, 1977

*William F. Lynn* for appellant.

*Richard A. Hennessy, Jr., District Attorney (John A. Cirando* of counsel), for respondent.

WITMER, J. On this appeal defendant asserts that the trial court erred in two respects in refusing defendant's requests to charge, to wit, as to agency and entrapment.

The evidence was undisputed that on February 5, 1976 defendant, a student at Syracuse University, sold over ½ ounce of the drug phencyclidine, also known as P.C.P., to Timothy H. Phinney, an undercover policeman, for the sum of $400, and was thereupon arrested. His defenses were that he was acting as agent of Phinney in procuring the drug and that he had never before engaged in the sale of drugs and was not disposed to do so, but that Phinney, through a Robert Park and Jessie Kapili, also students at Syracuse University, per-

sistently urged him to and entrapped him into making this sale.

Park had been arrested in November, 1975 for possession of marijuana, at which time the police told him that if he could help them out, the charge against him might be reduced or dismissed. On February 5, 1976 Park began co-operating with Officer Phinney, in the expectation of receiving lenient treatment for his offense. Three months previously Park had attended a Halloween party in a room occupied by defendant and another student at the university. One Mezner attended that party and he had with him the drug P.C.P. and sold some to Park, who used it. Kapili was also present at this party. He and defendant witnessed this sale. Kapili had known defendant for about a year and had not known him to sell drugs. Mezner and defendant's brother stayed in defendant's room that weekend, and defendant testified that Mezner left a quantity of P.C.P. in the room. Park knew about this. For a period of three months after that party Park frequently asked Kapili whether he could buy some of the drug from defendant, and he asked Kapili to speak to defendant about it. Kapili did so from time to time, and defendant consistently answered that he did not have any to sell, that the quantity in his room was not his, and that he hoped that Mezner would return and get it. Mezner never returned for it, and defendant resisted the efforts of Park, through Kapili, to buy it, until the February incident.

Park told Kapili that he wanted a large amount of the drug for sale, and eventually he understood Kapili to say that defendant would sell an ounce of it for $500; but it turned out that the price was $400. Park conferred with Officer Phinney on February 5, 1976 and agreed to help make a drug purchase from defendant. It appears that at this time defendant had finally told Kapili to let Park know that defendant had what Park wanted. Park then made arrangements with Kapili for the three of them, including Phinney, to meet Kapili in the latter's room later that afternoon. Park and Phinney took with them $500 of police money, in $20 bills. They met defendant in Kapili's room and, after introductions, Park told defendant that they were there to buy drugs. Defendant produced a test sample for them to examine and sniff. They said that it was acceptable and that they would buy an ounce. The door was locked and defendant left the room and returned in a few minutes with a plastic bag of the drug.

Phinney placed on Kapili's bed five piles of five $20 bills. Defendant took four of them and handed the fifth pile back to Phinney, saying that the price was $400. Phinney testified that he told defendant that, "if it moved all right on the street", he would like to buy more, and he asked whether defendant could get more, and defendant said that he could; and defendant added that he had done this before and makes about $50 on each bag that he sells at wholesale; and stated that he got it from a man in Cortland. Defendant was then arrested.

About a week after this transaction the marijuana charge against Park was reduced to disorderly conduct.

Defendant testified that he worked part time at the university to help maintain himself, and that he had not sold, pushed or dealt in drugs; that since Halloween, 1975 Kapili had repeatedly asked him to sell drugs to Park; that only after about three months of importuning by Kapili at the request of Park, and Mezner not having returned to get the drug that he had left in defendant's room, did defendant finally decide to sell it to Park; and did so only to get rid of both Park and the drug. Defendant stated that he did not buy the drug from Mezner or pay for it, nor did he use any of it. He also denied knowing that Park wanted it for resale; and he denied stating to Phinney that he had been selling "the stuff" for profit and that he could get more of it for Phinney.

Defendant's request for a charge on agency, on the theory that he acted only as agent for the police in this transaction, was properly denied. It is true that one who acts solely as agent for the buyer cannot be convicted of selling narcotics and, if any issue of fact is raised as to whether defendant was acting as agent, it must be submitted to the jury (People v Rankin, 55 AD2d, 826, 827); and it is error for the trial court to refuse to charge that if they find that defendant was acting as agent, they must acquit him (People v Lothin, 48 AD2d 932; People v Hool, 46 AD2d 912). Such cases, however, involved facts where defendants procured the drugs from a third-person seller (see People v Harris, 28 AD2d 1174, affd 24 NY2d 810; People v Rankin, supra). In this case, although defendant denied that the drug belonged to him, he claimed that it had been abandoned in his room and he assumed control (and, in fact, ownership) over it in selling it to Phinney. He made no claim that the sale was on behalf of a third-party seller. The sale was for his benefit and consummated by him directly to

Phinney. Under no view of the evidence, therefore, could defendant be deemed to be the agent of the buyer *(People v Carr,* 49 AD2d 656; *People v Jamison,* 29 AD2d 973). For this reason the court did not err in refusing to instruct the jury on the law of agency.

It remains to be determined whether the court erred in refusing to charge on the law of entrapment. Since he claimed that the drug was abandoned in his room and he admitted that he exercised control over it and sold it to undercover agent Phinney, the only possible defense left to him was entrapment (see *People v Freeman,* 36 NY2d 768, 770). Such defense was on the theory that he was not predisposed to commit this crime but was induced to make the sale by the active solicitation and conduct of Park and (unwittingly) Kapili in behalf of the police.

Section 40.05 of the Penal Law, effective September 1, 1967 provides as follows: "In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encourged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for purpose of criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. Inducement or encouragement to commit an offense means active inducement or encouragement. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." The statute "aims to discourage the use of overzealous methods of law enforcement officials to trap the unwary innocent into commission of an offense. Thus, the main thrust of the section is against pressure methods which may cause the commission of an offense by one who is not ordinarily disposed to commit it" (Hechtman, Parctice Commentaries, McKinney's Cons Law of NY, Book 39, Penal Law, § 40.05, p 125). "[I]n every case involving a judgment of conviction based on the testimony of an undercover police officer, the court has 'the duty of scrutinizing closely the conduct of the government agents' to ascertain whether their actions are a 'proper use of government power' *(Accardi v United States,* 257 F. 2d 168, 172, 173)" *(People v Joyce,* 47 AD2d 562, 564).

The issue of entrapment is a question of fact which is to be determined by the jury (see *People v Freeman,* 36 NY2d 768;

*supra; People v Lytle,* 38 AD2d 867; *People v Fisher,* 35 AD2d 886; *People v Fuller,* 34 AD2d 852). There must, of course, be sufficient evidence to warrant the court to submit the affirmative defense to the jury *(People v Hood,* 46 AD2d 837; *People v Fisher, supra).* The evidence that defendant refused to sell the drug despite repeated and persistent requests for nearly three months, that defendant had never before sold or dealt in drugs, and that he only made this sale to get rid both of Park and the drug which had been abandoned in his room, could lead a jury to conclude that he was "a person not otherwise disposed to commit" the crime charged and had been entrapped by the police (cf. *People v Isaacson,* 56 AD2d 220, 225). It is recognized that Park's repeated requests of defendant (communicated through Kapili) to purchase the drug prior to the month of February were not inspired by the police. Nevertheless, such requests set the stage and could be found to have conditioned defendant to be more susceptible to police entrapment on February 5. That gave ample time to the police to form an intent to entrap defendant and to effectuate it *(People v Freeman,* 36 NY2d 768, 770, *supra).*

It is not for us to conclude that as jurors we would not have exonerated defendant on his claim of entrapment. A question of fact was presented as to whether under section 40.05 of the Penal Law defendant was entrapped to make this sale, and the court erred in refusing to charge the jury the applicable principles of law involved. Since the claim of entrapment was defendant's only real defense, the error was critical and prejudicial.

The judgment should, therefore, be reversed and a new trial granted.

CARDAMONE, J. P., HANCOCK, DENMAN and GOLDMAN, JJ., concur.

Judgment unanimously reversed, on the law and facts, and a new trial granted.