THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GENE J. HEFFRON, Appellant.

Fourth Department, November 4, 1977

Alfred P. Kremer for appellant.

Lawrence T. Kurlander, District Attorney (Sharon Stiller of counsel), for respondent.

DILLON, J. Indictment No. 479 charged the defendant with the crimes of criminal sale of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree and criminal sale of a controlled substance in the sixth degree, all alleged to have occurred on March 12, 1975.

Indictment No. 619 charged the defendant with the crimes of criminal sale of a controlled substance in the second degree, alleged to have occurred on January 6, 1975, and criminal sale of a controlled substance in the third degree, alleged to have occurred on February 25, 1975.

At arraignment, defendant entered pleas of not guilty to both indictments. On February 17, 1976, with the consent of the District Attorney, the defendant entered a plea of guilty to the charge of criminal possession of a controlled substance in the third degree (Penal Law, § 220.16, subd 9) as alleged in Indictment No. 479. In consideration for the bargained plea, the remaining counts of that indictment, as well as those contained in Indictment No. 619, were to be dismissed. Prior to sentencing, the defendant claimed that his plea of guilty was coerced by his former attorney, and he moved for its withdrawal. Although it was determined that the defendant's claim of coercion was unfounded, the court nonetheless permitted the withdrawal of the guilty plea.

Defendant now appeals from a judgment of conviction entered upon a jury verdict of guilty of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41, subd 4), as charged in the first count of Indictment No. 619, which had been severed for trial.

The testimony on the People's case indicates that one Edward O'Dell, from whom State Police Investigators Poisson

and Rauber previously had purchased 33 "hits" of LSD, arranged for the investigators to meet with the defendant for the purpose of purchasing from him an additional 100 "hits" of LSD which O'Dell was unable to supply.

The investigators, accompanied by O'Dell, drove to a location on Avenue D in the City of Rochester, where they were joined by the defendant who then directed them to Field Street in that city. En route, the defendant told the investigators that he could get them 100 "hits" of LSD for $100. When they arrived at Field Street, the defendant left the vehicle for a brief period and, upon his return, he handed Rauber a glassine envelope containing pills which, upon analysis, were shown to contain six milligrams of pure LSD. Rauber gave the defendant $80 and Poisson gave him $20.

Although O'Dell was not a police informant, he was not indicted as a codefendant. At the time of trial, however, he was incarcerated at Auburn Correctional Facility and the defendant arranged for his return to Monroe County as a potential witness. When sworn, outside the presence of the jury, he asserted his privilege against self incrimination and was excused. The trial court declined to grant the defendant's request that immunity be conferred upon O'Dell. No such request was sought from the District Attorney nor did he make one of the court.

The defendant took the stand and, for the first time, asserted an agency defense. He testified that after he was introduced by O'Dell to Investigators Poisson and Rauber, he told them that he did not sell drugs. He said he received $100 from O'Dell and "I went into the house on Field Street and purchased one hundred tablets of LSD * * * [and] I came back to the car and I gave these drugs to Mr. O'Dell and Mr. O'Dell received a hundred dollars from the narcotics agents, and he give [sic] them the LSD." He denied ever having sold drugs.

The defendant was vigorously cross-examined. On the subject of the prior guilty plea which, if not withdrawn, would have disposed of the charge for which the defendant was on trial, there occurred the following colloquy:

"Q The reason you are sitting in jail is because you have indictments?

"A Yes.

"Q Any other reason?

"A Because my witness can't testify for me.

"Q How about the fact that you pled guilty to one of the indictments?

"A Because I was promised something that I did not get.

"Q You pled guilty to one of the indictments, didn't you, and that is one of the reasons you were sitting in jail?

"A No, sir.

"Q You pled guilty to selling drugs?

"A To purchasing some drugs.

"Q You pled guilty of purchasing drugs. Are you telling this jury that you didn't plead guilty to selling drugs?

"A I don't know how to answer that.

"Q Did you or did you not plead guilty to selling drugs?

"A Yes.

"Q But that was a lie, you never sold them?

"A I was promised—

"Q Did you sell drugs or not, was it a lie you pled guilty; did you sell or didn't you sell drugs?

"A No sir. I did not sell drugs.

"Q You lied when you pled guilty to selling drugs, didn't you?

"A Yes, I thought I would benefit from it.

"Q In fact, you would like again to benefit, and you are lying right now, aren't you?

"A No, sir, I am not."

On the subject of other similar crimes, the defendant was cross-examined as to the details of drug sales of February 25, 1975 and March 12, 1975. He specifically denied selling drugs on those dates. Following this thorough inquiry, the questioning continued:

"Q And those are the other charges that are facing you, the other indictments you said you had been in jail, those are the other charges?

"A I am not sure.

"Q How many other charges are there?

"A I think there are two others.

"Q How many charges, do you remember, you think, or don't you know?

"A I am not sure.

"Q You don't know how many charges are facing you?

"A I am worried about this one."

Thereafter the District Attorney presented rebuttal testimony. Investigator Poisson testified as to the details of the sale of February 25, 1975, as did Deputy Sheriff Ciaccia regarding the sale of March 12, 1975.

In his summation, the prosecutor returned to the subject of the withdrawn guilty plea with this statement: "He already told you he pled guilty to, I don't know what charge he pled guilty to, but he pled guilty to selling drugs before."

Several of the issues raised by the defendant are worthy of discussion. He first argues that he was denied the benefit of exculpatory testimony by virtue of the District Attorney's failure to request that immunity be conferred upon Edward O'Dell (CPL 50.30). The issue thus raised, recently described by the Court of Appeals as "potentially difficult" (People v Tyler, 40 NY2d 1065, 1066), must be viewed in the perspective of defendant's right to due process and his constitutional right to a fair trial (People v Sapia, 41 NY2d 160, 165; People v Tyler, supra). In the circumstances here, notably less compelling for reversal than those in Sapia, we find that the prosecution was not obliged to grant immunity to O'Dell.

In Sapia, the recalcitrant witness was a police informer. The Trial Judge, following an in camera discussion with the witness' attorney, concluded that his testimony, if believed, would have been materially exculpatory and repeatedly suggested, without success, that the District Attorney should recommend immunity. In holding that the prosecution had no duty to request immunity, the Court of Appeals described the witness as "a facilitator and an observer * * * not an actor in the criminal transactions" and stated that the limited extent of the witness' involvement is determinative (People v Sapia, supra, p 166).

Viewing the evidence most favorably to the People, O'Dell similarly was not an active participant in this criminal transaction. According to the testimony of the police, O'Dell arranged the meeting between them and the defendant, and was present at the sale, but he was not an actor in the criminal transaction. In short, he was a "facilitator and an observer".

Moreover, O'Dell was not a police informant and there is no basis in the record to conclude that his testimony would have materially exculpated the defendant. It cannot be argued here that "the People had placed themselves on the horns of a

dilemma and must either grant effective immunity * * * or, alternatively, accept a dismissal of the prosecution [citation omitted]" *(People v Sapia, supra,* p 166).

It is next argued that the prosecutor's extensive cross-examination of the defendant as to prior drug sales and the admission of rebuttal evidence of those crimes constituted reversible error. We disagree.

The defendant seeks to avoid criminal responsibility by asserting that he acted solely as the agent of the buyers (see *People v Lindsey,* 16 AD2d 805, affd 12 NY2d 958; *People v Sundholm,* 58 AD2d 224, 226). In offering the defense of agency, he disclaims any intent to commit the crime charged. Thus viewed, such a defense is not unlike that of entrapment, where evidence of prior crimes may properly be introduced at any time after the defense is raised *(People v Mann,* 31 NY2d 253; *People v Calvano,* 30 NY2d 199; see, also, *United States v Barcella,* 432 F2d 570).

Here the first indication that the defendant claimed to have been an agent of the buyers came during his own direct testimony. In such circumstances, the District Attorney, through cross-examination, was entitled to introduce proof of other crimes to establish the defendant's intent to sell drugs *(People v Flanagan,* 47 AD2d 959, cert den 423 US 935; *People v O'Keefe,* 87 Misc 2d 739; Rosenblatt, New York's New Drug Laws and Sentencing Statutes, § 106). Additionally, since the agency issue was not raised until the People had rested their affirmative case, it was permissible for the trial court to allow rebuttal proof of other drug sales.

Inquiry as to prior drug transactions, however, may not be extended to include proof that the defendant stands indicted for crimes other than that for which he is on trial. The prosecutor's cross-examination improperly elicited testimony that the defendant was under indictment for other crimes and, indeed, his questioning speculated as to how many other such pending charges there might be. It is well established that such questioning must be avoided *(People v Malkin,* 250 NY 185, 197; *People v Balsano,* 51 AD2d 130, 134; *People v Reingold,* 44 AD2d 191, 195).

An even more compelling argument for reversal of this conviction, however, concerns the cross-examination of defendant with respect to the withdrawn guilty plea and the prosecutor's reference to that plea during summation. The defendant relies upon *People v Spitaleri* (9 NY2d 168), where a

unanimous court reversed the conviction because the prosecution, as part of its direct case, introduced evidence that the defendant had entered a guilty plea to an attempt to commit the crime charged when such plea had in fact been withdrawn.

The People seek to distinguish *Spitaleri* on the grounds that it involved the introduction of the withdrawn guilty plea during the People's case-in-chief, rather than during cross-examination, and that it involved a plea under the indictment for which defendant was on trial, as opposed to a plea to a count of a separate indictment. As applied here, such distinctions are of form rather than substance.

Although the plea was entered under another indictment which also related to the sale of drugs, it was accepted in satisfaction of the charge for which the defendant was here tried. The cross-examination with respect to that plea might well have left the impression with the jury, reinforced by the prosecutor's remarks on summation, that it related to the indictment on which the defendant was here being tried. Moreover, the fact that the proof of the plea occurred on cross-examination, and not on the People's direct case, is without significance *(People v Spitaleri, supra,* pp 170-171).

Despite the defendant's withdrawal of his admission of guilt, the prosecutor repeatedly characterized it as a plea of guilty to selling drugs and further emphasized its impact by asking the defendant whether he lied when he entered such plea. Significantly, the District Attorney's persistence in this vein carried over to his summation. In introducing the subject of the withdrawn plea, particularly in the misleading fashion displayed here, the prosecutor impermissibly committed basic and prejudicial error *(People v Droz,* 39 NY2d 457, 463; *People v Spitaleri, supra; People v Porter,* 16 AD2d 821; *People v Brady,* 14 AD2d 575). When the court allowed the defendant to withdraw his plea, it was annulled and ceased to be evidence. The plea should have been out of the case "forever and for all purposes" *(People v Spitaleri, supra,* p 173).

The People submit that because defense counsel failed to interpose specific objections to the prosecutorial cross-examination as to the withdrawn guilty plea and as to the defendant's other unresolved indictments, the issues arising therefrom have not been preserved for appeal. Where, as here, the errors are so fundamental and prejudicial as to require a new trial in the interest of justice (see *People v Reingold,* 44 AD2d

191, *supra),* this court may consider and determine such issues despite the absence of protest at trial *(People v Robinson,* 36 NY2d 224; CPL 470.15, subd 6, par [a]).

We have examined the other assertions of error advanced by the defendant and find them to be without merit. In view of the result we have reached, however, we note that the prosecutor also questioned the defendant concerning the readiness of others to testify on his behalf. Since a defendant has no obligation to produce witnesses to establish his innocence, such questioning should be avoided upon a new trial (see *People v Kitchen,* 55 AD2d 575).

The judgment should be reversed and a new trial granted.

CARDAMONE, J. P., SIMONS, HANCOCK and DENMAN, JJ., concur.

Judgment unanimously reversed, on the law and the facts, and a new trial granted.