THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OTIS BUTTS, Appellant.

First Department, November 10, 1987

**APPEARANCES OF COUNSEL**

*Martha Krisel* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Paul Shechtman* of counsel *(Mark Dwyer* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

Ross, J.

The question presented by this appeal is whether Trial Term erred in denying defendant's request to instruct the jury on the defense of entrapment, where the defendant has testified and denied participating in the narcotic transaction? The attorneys have informed the court that this is an appellate issue of first impression.

On or about May 16, 1985, a New York County Grand Jury filed an indictment against defendant, which charged him with four counts of the crime of criminal sale of a controlled substance in the third degree (Penal Law § 220.39), four counts of the crime of criminal possession of a controlled substance in the third degree (Penal Law § 220.16), and four counts of the crime of criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03).

The charges contained in the indictment pertain to four sales of cocaine allegedly made by defendant to two undercover New York City police officers. These sales occurred between May 7 and May 9, 1985, and took place in Public School I.S. 88, a junior high school located at 114th Street between Seventh and Eighth Avenues in Manhattan, where defendant was employed as a security guard.

At the jury trial, the People's case against defendant, in substance, consisted of the testimony of Detective Robert Donawa (Detective Donawa) and Police Officer Deborah Lewis (Officer Lewis).

Detective Donawa testified that in April 1985, he was assigned to the Manhattan North Narcotics Unit of the police department as an undercover police officer; and, in late April 1985, he was instructed to conduct an investigation inside I.S. 88. This investigation was done with the knowledge of the Board of Education (Board), whose representatives provided him with bogus credentials, which identified him as Robert Jenkins, a staff analyst for the Board. According to Detective Donawa's testimony, during the first few days at the school he became acquainted with staff members; initiated conversations about the subject of drugs with some staff members, who were under age 40, since persons of that age were "more likely to

be involved in drugs"; and he first spoke to defendant, who the witness knew to be a security guard, on April 30th, and, then the witness next spoke to the defendant on May 2nd, but, on neither one of those occasions did they discuss the subject of drugs.

In pertinent part, Detective Donawa testified, about the circumstance of defendant's first drug sale to him, as follows: On or about May 6th, a female in the school told the witness "she was going to introduce [him] to somebody * * * that could turn [the witness] on to drugs". Thereafter, at approximately 1:20 P.M., the next afternoon, May 7th, the subject female, the defendant, and the witness met inside room 210 of the school; at that time, "[t]he female advised [defendant] * * * I was interested in copping [sic], which is buying some cocaine * * * I [the witness] used the word 'blow'. It's a street terminology used for cocaine". In response, defendant, in substance, informed the witness that he had available to sell "20" (which meant $20 worth of cocaine), "25" (which meant $25 worth of cocaine), "50" (which meant $50 worth of cocaine), and "half grams and grams" (which meant $100 worth of cocaine). After defendant finished reciting his cocaine inventory and its prices, Detective Donawa stated "I told him [defendant] that I wanted two twenty fives. This is in the presence of * * * the same female. At this time, myself and [defendant], we proceeded up to the third floor Program Office. [Defendant] opened the door with the key. Myself and [defendant] proceeded inside this room. Inside the room was a desk and one locker, the only locker in there. [Defendant] opened up the locker". Detective Donawa testified that, after opening the locker, defendant removed from its top shelf a brown paper bag, which "[defendant] turned * * * over on the * * * desk and * * * out [came] numerous tin foils [of] different sizes * * * At this time [defendant] removed from that group two tin foils and gave them to me [the witness]. He [defendant] said they were twenty fives, they cost $25 apiece. I [the witness] gave [defendant] $50 of pre-recorded buy money".

The second drug transaction between Detective Donawa and the defendant took place two days later on May 9th. In pertinent part, Detective Donawa testified about the circumstances of defendant's second drug sale to him, as follows. At about 1:00 P.M. on May 9th, Detective Donawa approached the defendant on the first floor lobby of the school, and told defendant "I was interested in coping [sic] some blow". Defendant replied that he only had a "25" left, in view of the fact

that earlier that day "he had sold a few * * * in the basement of the [school]". Detective Donawa told the defendant he would buy the $25 worth of cocaine. Subsequently, the defendant once again escorted the witness to the third-floor Program Office, mentioned *supra,* where defendant opened the locker, mentioned *supra,* removed a tinfoil packet from the top shelf, placed it inside a matchbook, and handed that matchbook to the witness.

As mentioned *supra,* the defendant allegedly made two more cocaine sales to Officer Lewis. This officer, who was also assigned to Manhattan North Narcotics as an undercover police officer, was conducting, at the same time as Detective Donawa, a separate investigation inside I.S. 88. She testified that representatives of the Board provided her with bogus credentials, which identified her as a school lunch helper.

In pertinent part, Officer Lewis testified, about the defendant's two drug sales to her, as follows: On May 2, 1985, the witness spoke with defendant and asked him where she could get drugs, and "he [defendant] said he would bring me some blow, which, in street terminology, blow means cocaine. At the time I told him okay *[sic]* and he also told me that in about two weeks he would be having a business of his own which I took him to mean that he was selling cocaine".

Thereafter, at approximately 1:45 P.M., on May 7, 1985, inside the school, defendant approached Officer Lewis, and told her "I [defendant] have something today", however, she responded that she did not have any money; but, the defendant answered "I [defendant] will take care of you, which I [the witness] took to mean that he would give me the cocaine and I would pay him at a later date". Furthermore, the witness asked defendant if he now had his own business, and they, in substance, had a conversation, as follows: "At this time [defendant] answered * * * me, [defendant] and [his] cousin are doing it together. I [the witness] then asked [defendant] what he had, meaning how much stuff he was selling * * * [H]e told me twenty fives, which is $25 worth of drugs. I then said to [defendant], okay *[sic],* let me [the witness] get one and I will pay you [the defendant] tomorrow". Sometime later that afternoon, in the kitchen area of the school, defendant, after making sure no one else was present, gave the witness a tinfoil containing cocaine.

During the morning of the next day, May 8, 1985, the witness testified that she saw defendant in the school, paid

him for the cocaine she had received on May 7th, and told him "I might want to get a little something later on that day". Thereafter, early in the afternoon of that same day, the witness approached defendant, told him, in substance, she wanted to purchase another $25 of cocaine, defendant replied he "had to go upstairs" to get the drug, and they agreed to meet near the kitchen area. Within approximately five minutes, according to the witness' testimony, defendant met the witness in the kitchen area, and gave her a blue matchbook with a tinfoil of cocaine inside it.

The People produced evidence at trial that the four tinfoils, mentioned *supra,* which defendant sold to Detective Donawa and Officer Lewis, were analyzed at the Police Department Laboratory, and each one was found to contain cocaine.

When the People rested, the defendant presented his defense, which consisted of defendant's own testimony. The defendant testified, in substance, he was 32 years old; he was a security guard at the subject school; prior to May 9, 1985, Detective Donawa allegedly asked the witness on 4 or 5 different occasions to obtain cocaine for Detective Donawa, and defendant allegedly refused each time; nevertheless, on May 9, 1985, defendant contended he allegedly purchased $25 worth of cocaine from a street drug peddler and resold it to Detective Donawa "as a favor to him"; and Officer Lewis had approached defendant for drugs, but, defendant allegedly never responded to her requests.

The People recalled Detective Donawa and Officer Lewis as rebuttal witnesses, and they both reiterated in their testimony that each one of them participated in two separate drug transactions with defendant.

Following the submission of this case to the jury, defendant was convicted of four counts of the criminal sale of a controlled substance in the third degree.

Defendant contends the trial court erred in denying defendant's request that the jury be instructed to consider the affirmative defense of entrapment, as to the alleged May 7th sale to Detective Donawa, and the alleged May 7th and May 8th sales to Officer Lewis, solely, upon the basis, the trial court viewed that defense as inconsistent with defendant's unequivocal testimony that he did not participate in those three sales. Incidentally, the trial court did instruct the jury to consider the entrapment defense as to the May 9th sale to Detective Donawa, since defendant admitted in his testimony to making that sale.

The entrapment defense was first recognized (LaFave and Israel, Criminal Procedure, at 247-248 [1985]) by the United States Supreme Court in *Sorrells v United States* (287 US 435 [1932]). In the *Sorrells* case *(supra),* the defendant was charged with selling to a prohibition agent, *inter alia,* a half gallon of whiskey in violation of the National Prohibition Act, and defendant defended on the ground that he had been entrapped by the Government agent. After reviewing the facts, the Supreme Court upheld the entrapment defense, and stated, in pertinent part *(Sorrells v United States, supra,* at 452) "[t]he defense is available, not in the view that the accused though guilty may go free, but that the Government cannot be permitted to contend that he is guilty of a crime where the government officials are the investigators of his conduct".

New York adopted the defense of entrapment in the late 1960's, when the Penal Law was statutorily revised for the first time since 1909 (Comment, *Affirmative Defenses Under New York's New Penal Law,* 19 Syracuse L Rev 44, 48-49 [1967]).

This defense is found in the Penal Law § 40.05, entitled: "Entrapment", and reads: "In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for purpose of criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. Inducement or encouragement to commit an offense means active inducement or encouragement. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment."

Analysis of Penal Law § 40.05 indicates that this section seeks to discourage the use by law enforcement officials of overzealous methods that might lure an unwary innocent into the commission of a crime. We have held "[e]ntrapment is an affirmative defense (Penal Law § 40.05), which the defense has the burden of proving *(People v Millard,* 90 AD2d 590, 591)" *(People v Ventura,* 108 AD2d 65, 71 [1985], *affd* 66 NY2d 693 [1985]). Moreover, the Court of Appeals in *People v McGee* (49 NY2d 48, 61 [1979], *cert denied sub nom. Waters v New York,* 446 US 942 [1980]) has ruled that the issue "[w]hether a defendant is predisposed to commit an offense or was induced

to commit the offense is a question of fact (see *People v Freeman,* 36 NY2d 768; *People v Sundholm,* 58 AD2d 224; *People v Shangraw,* 55 AD2d 796)." However, in order to raise this issue of fact "[t]here must, of course, be sufficient evidence to warrant the court to submit the affirmative defense to the jury" *(People v Sundholm,* 58 AD2d 224, 228 [1977], *supra).*

Generally, a defendant in this State may assert inconsistent defenses (31 NY Jur 2d, Criminal Law, § 189). For example, in *People v Steele* (26 NY2d 526, 529 [1970]), the Court of Appeals decided, in view of the evidence in that assault case, that an alibi defense did not preclude a defense request for a charge on justification, "[s]ince a jury might disbelieve the alibi and still find, on the prosecution's evidence, that defendant acted justifiably, the prosecution claim of inconsistent defenses is not a bar to the charge requested". Although inconsistent defenses are permitted, this "principle, however, has never been applied to countenance selective dissection of the integrated testimony of a single witness as to whom credibility, or incredibility, could only be a constant factor" *(People v Scarborough,* 49 NY2d 364, 373 [1980]).

In the instant case, although defendant testified he did not make the sales of May 7th to Detective Donawa, and of May 7th and May 8th to Officer Lewis, he requested a charge on entrapment as to them. It appears to us that defendant's testimonial denial of these three sales is an unequivocal admission that he was not entrapped. Therefore, logically, such testimony eliminates any justification for an entrapment charge concerning the subject sales.

The parties to this appeal do not cite any appellate court decision in this State, which has decided the issue: Is a defendant precluded from interposing an entrapment defense, when he denies in his testimony that he was involved in the sale?

Since the United States Supreme Court has not taken a position on this issue (Note, *Entrapment and Denial of the Crime: A Defense of the Inconsistency Rule,* 1986 Duke LJ 866-891), we have reviewed the decisions of the United States Courts of Appeal, and of the appellate courts of sister States, and we find that a number of those courts have held that "defendants may not testify that they did not commit the crime charged and also assert the entrapment defense" *(United States v Dorta,* 783 F2d 1179, 1181 [4th Cir 1986]). Some of the Federal and State appellate courts that have also

taken the position stated by the court in *United States v Dorta (supra)* are: *United States v Mayo* (705 F2d 62, 72-73 [2d Cir 1983]); *United States v Annese* (631 F2d 1041, 1046-1047 [1st Cir 1980]); *Brooks v State* (418 So 2d 195, 198 [Crim App, Ala 1982]); *Mellins v State* (395 So 2d 1207, 1209 [Dist Ct App, Fla, 4th Dist 1981]); *People v Arriaga* (92 Ill App 3d 951, 416 NE2d 418, 421 [App Ct, 2d Dist 1981]).

We find, as did the court in *United States v Dorta (supra,* at 1181-1182), "the better rule is that defendants are not entitled to a jury instruction on entrapment when they testify that they have not committed the crime charged [This position] is also in the interest of protecting the integrity and the truth-finding function of our criminal trials".

In our opinion, the public policy of deterring the commission of perjury, is furthered by precluding a defendant, who testifies that he did not commit a crime, from pleading entrapment. In *United States v Rey* (706 F2d 145, 147 [5th Cir 1983]), a unanimous court stated "[A] criminal prosecution such as this is not a game. It incorporates a moral content and an ultimate concern with guilt or innocence that are inconsistent with permitting the accused to say, 'I didn't do it, but if I did, the government tricked me into it' ".

Once the defendant took the stand and denied that he made the sales in issue, the jury was presented with two sharply defined versions of the events that occurred, since, as mentioned *supra,* Detective Donawa and Officer Lewis had testified that defendant sold them cocaine on those occasions. Thus, as to those sales, there was no middle ground, in view of the fact, the jury simply had to elect whether to believe the officers or the defendant. For a claim of entrapment to be interjected concerning those sales would have required the jury to take an irrational view of the evidence. The trial court, in denying defendant's request for an entrapment charge as to the sales the defendant denied he made, stated, in pertinent part:

"MR. DORF (Defense Counsel): I would ask that entrapment be charged as to all sales, even though the defendant has denied—I realize there is an inconsistency there, but I would ask that—

"THE COURT: How do you get around it? What do you say to the jury? Well, he has denied it, but consider it anyway? He says it didn't happen, but consider it. He says there is no such defense because he denies there was any sale. Insofar as you're asking it, I deny it".

In other words, "[t]he defendant's testimony * * * was either to be accepted or rejected in its entirety. The jury's verdict of guilty necessarily indicated its rejection. There was no basis left * * * for a finding of entrapment" *(Sylvia v United States,* 312 F2d 145, 147 [1st Cir 1963]).

In summary, we turn to *United States v Mayo (supra,* at 72-73), where the court observed: "We cannot reconcile [defendant's] argument that he was induced by [the government] to commit the alleged offenses with his testimony that he was not involved in the alleged criminal conduct. He chose to testify and to defend on the grounds of non-involvement and the proof offered to support this defense negated any possibility of entrapment. In these circumstances, we do not believe that [defendant] was entitled to the defense of entrapment".

Based upon our analysis *supra,* we find that the trial court did not err in denying the entrapment charge as to the subject sales. We deny the defendant's request that this court hold that he is entitled to an entrapment charge, while simultaneously denying that he made the alleged sales. Here the jury had to decide, with reference to the three sales involved, that either defendant made such sales to the undercover police, or that no such sales ever occurred. Thus, a general entrapment charge was not warranted.

We have examined the other contentions made by the defendant, and we also find them lacking in merit.

Accordingly, judgment, Supreme Court, New York County (Herman Cahn, J.), rendered February 6, 1986, which convicted the defendant, following a jury trial, of the crimes of four counts of criminal sale of a controlled substance in the third degree (Penal Law § 220.39), and sentenced him to concurrent terms of imprisonment of 3 to 9 years on each count, is unanimously affirmed.

SANDLER, J. P., SULLIVAN, MILONAS and WALLACH, JJ., concur.

Judgment, Supreme Court, New York County, rendered on February 6, 1986, unanimously affirmed.