VIGIL, Judge (concurring in part, dissenting in part). {57} I concur with the majority opinion except Part C in which it concludes that improperly admitting evidence before the jury that Defendant attempted to plead guilty did not constitute reversible error. For the reasons which follow, I respectfully submit that Defendant is entitled to a new trial in which the improper evidence is excluded from the jury’s consideration. Since the majority disagrees, I dissent. FACTS {58} On January 31, 2006, Officer Guinn arrested Defendant and booked him into the Otero County Detention Center on a felony charge of aggravated stalking. Officer Guinn noted that Defendant was to appear in court “when called upon.” Three days later on February 3, 2006, Defendant was brought before the magistrate court for his first appearance. Because a felony is not within the jurisdiction of the magistrate court, at a first appearance the magistrate judge only advises the defendant of the charge, the penalty provided, his rights, and sets the matter for a preliminary hearing. Rule 6-501(A), (D) NMRA. “In actions not within magistrate trial jurisdiction, no plea shall be entered.” Rule 6-302(A) NMRA. At Defendant’s first appearance the magistrate judge noted that Defendant wanted an attorney, wanted to consult with counsel, and wanted a trial by jury. Since Defendant was indigent and incarcerated, it was ordered that a public defender represent Defendant. {59} After he obtained counsel, Defendant entered a plea of not guilty, and a jury trial was held in the district court on the felony charge. The State presented the testimony of Tamisha, Tamisha’s Mend Samantha, Officer Guinn, and Officer Jackson and established the facts set forth in paragraphs 2-6 of the majority opinion. Except to the extent raised by the Miranda issue addressed in Part B of the majority opinion, Defendant does not challenge on appeal the testimony of these witnesses or the facts established by their testimony. {60} The State’s last witness at trial was Ms. Gilmore, a victim advocate with the district attorney’s office. She testified that she attended Defendant’s first appearance in the magistrate court. Defendant and whoever else was in jail were shown a videotape which explained to the prisoners their rights. When the videotape was played, no attorney was present to advise Defendant. After the video was played to the group of prisoners, Ms. Gilmore said that the magistrate judge read the criminal complaint to Defendant, and the magistrate judge asked Defendant to plead to the charge. Ms. Gilmore testified that Defendant stated “he wanted to plead guilty.” Defense counsel immediately objected and, at a bench conference, argued that the testimony was highly improper and related to an attempt to plead guilty without the presence of counsel. Defendant moved for a mistrial. Arguing that the evidence was admissible, the prosecutor said, “The proffer is that ... Defendant began to talk about I just want to go to Arkansas, everything that the victim said is true, I just want to plead guilty. We believe that’s an admission of guilt. It’s — it’s admissible.” After further argument, the district court ruled that the prosecutor could lay a foundation for admission of the evidence. {61} Ms. Gilmore then testified that the magistrate court utilizes a video arraignment procedure. Ms. Gilmore said that the practice is for a videotape to be played explaining to the prisoners their rights and that if they have a felony charge, this constitutes their first appearance and if they have a misdemeanor charge, this is their arraignment. After the ten-minute video is played, the magistrate judge calls each prisoner one at a time and they sit in a chair and he talks to them through a video monitor. While seated in the chair, the defendant is able to see the judge on a video monitor, and the judge is likewise able to see the defendant on a video monitor from his location. There is a third video monitor in the jail which is pointed at the audience so the public can see and hear the entire process. The magistrate judge then asks each defendant whether he observed and understood the videotape. On the basis of this testimony and over Defendant’s objection, the district court ruled that the State established a foundation to admit Ms. Gilmore’s testimony. {62} Ms. Gilmore then told the jury that Defendant acknowledged to the magistrate judge that he understood the rights explained by the videotape and said he wanted to plead guilty. The magistrate judge advised Defendant he could not accept a guilty plea because he was charged with a felony, and Ms. Gilmore said that Defendant replied, “[b]ut I’m not denying anything that she has said. I just want to go back to Arkansas.” {63} Defendant testified in his own defense. He began his testimony by explaining why he had tried to plead guilty in the magistrate court: Well, in that particular occasion, with everything I heard from everybody in New Mexico in jail, if I pleaded guilty, then my trial would go faster. And that’s basically all I really wanted was for my trial to go faster. Not knowing anybody in New Mexico and not having any family and friends, I just wanted to get back home. Defendant then denied committing the acts Tamisha accused him of. Explaining why he had said in the magistrate court that he agreed with what Tamisha was saying, Defendant testified, “[b]eeause as I said earlier, I just didn’t want to fight about this any more. I felt like my chances of winning this case against a female this county knows [were not good], so my best bet would be to plead guilty, get this over with, and get back home as soon as possible.” {64} Not surprisingly, the prosecutor’s cross examination of Defendant was detailed and devastating. Q. Do you recall being arraigned at the video arraignment over in Magistrate Court? You’re in jail, video machine is set up; is that correct? A. Yes, sir. Q. And you remember you had to watch a videotape; is that correct? A. Yes, sir. Q. And the Judge came on the screen and called you up to the chair and asked you are you Christopher Smile? You know that? A. Yes, sir. Q. You remember that? A. Yes, sir. Q. Okay. Do you remember the Judge asking you if you watched the videotape and understood it? A. Yes, sir. Q. And you remember saying that yes, you watched it, and you understood it? A. Yes, sir. Q. And do you remember the Judge asking you how do you plead, and you said I plead guilty. Is that correct? A. Yes, sir. Q. And do you recall telling the Judge or the Judge telling you he couldn’t take the guilty plea because it was a felony? A. Yes. Q. And do you remember saying at that time everything that Tamisha said was true? A. Yes, sir. Q. I just want to plead guilty and go back to Arkansas. Is that what you said? A. Yes, sir. Q. Now, at the time of that arraignment, you were being arraigned on aggravated stalking in that courtroom; isn’t that true? A. Yes, sir. Q. And you said everything she said about aggravated stalking was true, correct? A. I never specified what she said was true, never said everything she said was true, I didn’t specify what. Q. Well, you were being arraigned for aggravated stalking; do you agree with that? A. That doesn’t mean that I was agreeing to the fact that — I was agreeing to the fact that she charged me with aggravated stalking. Q. Well, let’s just try to agree to disagree on some stuff. This was on date of arraignment, you already said you agreed to — you tried to plead guilty. Do you agree that you said, “Everything that Tamisha said was true”? A. Yeah. Q. Now, when those questions are— you understand that you were being arraigned for aggravated stalking, is that correct? A. Yes, sir. Q. Do you understand and recognize that the Judge read you the elements of the crime of aggravated stalking? A. Yeah. (Inaudible) evidence of what it came to be aggravated stalking, and I’m pretty sure I would be kind of upset about being locked up for six months over it. Q. And do you understand — or do you agree that he told you the — well, I won’t go into that. But you knew that there would be repercussions for you saying that; is that fair enough? A. Yes, sir. Q. Okay. Now, in your cross — or direct examination with [your counsel], you said — tried to make an excuse for this. You said — basically, you said everything she said was true only because you wanted to magically get out of jail, go take care of your baby girl in Arkansas. Is that what you said? A. First of all, it wasn’t an excuse, it was a true statement. Q. Okay. So when you talked to [the] Judge ... and you said everything Tamisha said was true, are you saying that you were lying to a Judge? A. No, I wasn’t lying to anybody. Q. Well, was this a true statement, everything— A. Yes, it was true. Q. Mr. Smile, so what you’re saying now is when you said everything Tamisha said was true, that is a true statement? A. Yes, it is. Q. So your statement earlier today with [your counsel on direct] that that wasn’t true, was that a lie? A. I never said it wasn’t true. The only thing I ever said was — what I said and what the truth — because I wanted to go back home to be with my child. That’s all I’ve been wanting for the last six months was to see my daughter. ANALYSIS {65} I agree with the majority that Rule 11-410 of the Rules of Evidence was clearly violated. See Majority Opinion ¶¶ 39^41. Rule 5-304(F) NMRA of the Rules of Criminal Procedure was also violated. This rule is equally clear and unambiguous and in almost the same language directs: Evidence of a plea of guilty, later withdrawn ... or of an offer to plead guilty [or] no contest ... to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. Id. {66} The fact that evidence of Defendant’s offer to plead guilty was admitted, as opposed to evidence of an actual plea, makes no substantive difference, and the majority agrees. Majority Opinion ¶42. Rules 11-410 and 5-304(F) equate offers to plead guilty with actual guilty pleas. Moreover, the cases which have considered whether such a distinction makes a difference have concluded it does not. See State v. McGunn, 208 Minn. 349, 294 N.W. 208, 209 (1940) (concluding that a conditional offer to plead guilty to the court, which the court did not accept, is to be treated the same as a withdrawn guilty plea); State v. Meyers, 99 Mo. 107, 12 S.W. 516, 519 (1889) (holding that evidence of an earlier rejected guilty plea was not admissible); overruled on other grounds, Ex Parte Keet, 315 Mo. 695, 287 S.W. 463 (1926); Dykes v. State, 213 Tenn. 40, 372 S.W.2d 184, 186 (1963) (equating an offer to plead guilty with an actual plea that is withdrawn); Dean v. State, 72 Tex.Crim. 274, 161 S.W. 974, 975 (1913) (concluding that an offer of the defendant’s counsel to plead guilty was not admissible). {67} I first part company with the majority in its conclusion that the error in this case is subject to a harmless error analysis. Majority Opinion ¶ 43. Because of the nature of statements made to a judge in a judicial proceeding while pleading guilty or offering to plead guilty, the erroneous admission of such statements into evidence is not subject to a harmless error analysis. {68} It is beyond debate that the best evidence of whether a competent accused committed a violation of the criminal law is his own statement that he committed the act with the requisite intent. This is exactly what a guilty plea is, and the probative force of such evidence cannot be overlooked. When a defendant proceeds to trial, it is on the basis of a “not guilty” plea. Allowing the State to introduce evidence of an attempt to plead guilty nullifies the entire basis for the trial. The resulting prejudice is so obvious and so overwhelming that when a defendant’s prior attempt to plead guilty to a judge is improperly admitted into evidence, reversible error is committed regardless of what the remaining evidence in the case may be. {69} The majority asserts that the admission of Defendant’s attempted guilty plea into evidence did not constitute structural error. Majority Opinion ¶45. I disagree. Defendant’s constitutional right to the presumption of innocence instantly evaporated the moment Ms. Gilmore told the jury that when Defendant appeared before the magistrate judge, Defendant said he “wanted to plead guilty,” and that “I’m not denying anything that she [Tamisha] has said.” {70} In Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895), the United States Supreme Court declared: The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. Furthermore, the ‘'presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial.” Estelle v. Williams, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). What occurred in this case deprived Defendant of a “basic component of a fair trial.” Id. The very foundation of how we administer our criminal justice system is weakened when we sanction subjecting such an error to a harmless error analysis. I therefore conclude that structural error occurred in this case. {71} It is the public policy in New Mexico to encourage, not to discourage, plea agreements. “Guilty pleas are an essential part of our criminal justice system[.]” Trujillo, 93 N.M. at 727, 605 P.2d at 235. In order to facilitate plea discussions, our Supreme Court has declared Rule [11-J410 does not set up standards of relevancy and trustworthiness, and we will not impose any on it. If a plea is never entered or entered and then withdrawn, at trial it is to appear as though the earlier plea and/or plea discussions never took place. The slate is wiped clean once plea negotiations fail or the defendant withdraws his plea. [A] weighing of conflicting policies demonstrates that the balance is tipped in favor of interpreting Rule [11-]410 as the cloak of privilege around plea negotiation discussions. Trujillo, 93 N.M. at 727, 605 P.2d at 235. The majority acknowledges this is the rule in New Mexico. Majority Opinion ¶ 42. However, the majority fails to acknowledge that this public policy places New Mexico squarely in line with the United States Supreme Court and other state courts that conclude that the admission into evidence of an aborted guilty plea constitutes reversible error. {72} Kercheval, 274 U.S. at 223, 47 S.Ct. 582, establishes the federal evidentiary rule that admitting a withdrawn guilty plea into evidence constitutes reversible error, regardless of why the plea was withdrawn. The reasoning is particularly applicable here: The effect of the court’s order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against [the defendant] was in direct conflict with that determination. When the plea was annulled it ceased to be evidence. By permitting it to be given weight [by the jury] the court reinstated it pro tanto. Id. at 224, 47 S.Ct. 582. The Supreme Court further observed that a trial is based upon a plea of not guilty which is substituted for the prior guilty plea. Id. Therefore, allowing the withdrawn plea to be admitted into evidence for the jury’s consideration places a defendant “in a dilemma utterly inconsistent with the determination of the court awarding him a trial.” Id. The Supreme Court did not discuss or analyze whether the evidence was otherwise sufficient to sustain the conviction. See also State v. Jackson, 325 N.W.2d 819, 822 (Minn.1982) (holding that statements made in connection with a withdrawn plea are to be treated as if they were never made, and reversing the defendant’s conviction where statements he made in connection with a plea agreement were admitted into evidence to impeach his trial testimony); People v. Heffron, 59 A.D.2d 263, 399 N.Y.S.2d 501, 504, 506 (N.Y.App.Div.1977) (noting that the argument for reversal was compelling because in cross examination of the defendant concerning a withdrawn guilty plea, the prosecutor asked the defendant whether he lied when he entered the plea. Although there was no objection to the questioning, the court reversed because the error was “so fundamental and prejudicial as to require a new trial in the interest of justice”); State v. Hayes, 285 Minn. 199, 172 N.W.2d 324, 325-26 (1969) (reversing the conviction in a bench trial where evidence of a withdrawn guilty plea in a prior arraignment for the same offense was admitted); D. Welch, Annotation, Propriety and Prejudicial Effect of Showing, in Criminal Case, Withdrawn Guilty Plea, 86 A.L.R.2d 326, §§ 4, 8, at 331-35, 338-39 (1962) (collecting cases and noting it is the rule in many jurisdictions that admission into evidence of a withdrawn guilty plea is reversible error because it is not admissible for any purpose at a trial upon a plea of not guilty and that such error is not cured even by an instruction to jurors to disregard their knowledge of that fact). {73} My second disagreement with the majority is how it applies the concept of harmless error to the admitted violation. The majority states that it “cannot conclude that there is a reasonable possibility that the admission of the evidence that Defendant attempted to plead guilty affected the jury’s verdict in this case.” Majority Opinion ¶ 46. Furthermore, the majority disagrees that the admission of Defendant’s attempted guilty plea “may have forced him to take the stand in violation of his constitutional rights.” Majority Opinion ¶ 53. These conclusions appear to be grounded upon a conclusion that the attempted plea was nothing more than cumulative evidence. Majority Opinion ¶¶ 50-52. {74} The admission into evidence of Defendant’s attempt to plead guilty and statements he made in connection with that attempt violated, touched upon, and implicated various constitutional rights of Defendant. Two constitutional rights of Defendant were squarely violated. Trujillo mandates that where a plea fails, “at trial it is to appear as though the earlier plea and/or plea discussions never took place.” 93 N.M. at 727, 605 P.2d at 235. Stated another way, at trial Defendant was entitled to every constitutional safeguard and presumption associated with a plea of “not guilty.” Because of the nature of a guilty plea, which I have already discussed, improperly admitting into evidence Defendant’s attempt to plead guilty destroyed Defendant’s constitutional presumption of innocence. In addition, the State’s improper use of Defendant’s statements made in connection with his offer to plead guilty resulted in him testifying against himself “in substance if not in form.” See Wood v. United States, 128 F.2d 265, 274 (D.C.Cir. 1942) (using this language). Once Defendant’s statements in connection with the attempted plea were improperly admitted, his constitutional right to remain silent was destroyed. He had to testify about the plea if he was to have any hope of overcoming its effect on the jury. See Spitaleri, 212 N.Y.S.2d 53, 173 N.E.2d at 37 (stating that after the defendant’s withdrawn guilty pleas was improperly admitted into evidence, he was “in effect forced to take the stand” to explain that although he was innocent, he pleaded guilty because his lawyer promised him a suspended sentence). Finally, State v. Reardon, 245 Minn. 509, 73 N.W.2d 192, 195 (1955), squarely holds that the admission into evidence of a withdrawn guilty plea violates the due process protected by both the United States Constitution and the Minnesota Constitution. {75} There are additional constitutional rights which are touched upon or implicated in this case. The record establishes that a videotape was shown to a group of prisoners in jail, which included Defendant, that explained to the prisoners their “rights.” However, the videotape is not before us, so we do not know its contents. We do know, however, that Defendant had no attorney when the videotape was played and he offered to plead guilty. Whether Defendant was afforded his constitutional right to counsel and whether there was a valid waiver of this constitutional right are both implicated. See State v. Melendez, 165 N.J.Super. 182, 397 A.2d 1117, 1118, 1120 (1979) (per curiam) (concluding that the defendant’s constitutional right to counsel was violated when he pleaded guilty at his first appearance because it was made without counsel or a valid waiver of counsel, and directing that “[n]o admissions made by defendant during the original arraignment shall be admissible in evidence against him in the event he is retried”). Secondly, we have no basis for concluding whether Defendant validly waived his constitutional right against self-incrimination when he offered to plead guilty. This constitutional right is also implicated. See United States ex rel. Spears v. Rundle, 268 F.Supp. 691, 699 (E.D.Pa.1967), aff'd, 405 F.2d 1037 (3d Cir.1969) (concluding that a guilty plea cannot operate as a waiver of the constitutional right against self-incrimination if there was no valid waiver of that privilege in making the plea itself). {76} Under Chapman, in order to hold that constitutional error does not require reversal, we must be able to conclude that the error was “harmless beyond a reasonable doubt.” 386 U.S. at 24, 87 S.Ct. 824; Johnson, 2004-NMSC-029, ¶8, 136 N.M. 348, 98 P.3d 998; State v. Alvarez-Lopez, 2004-NMSC-030, ¶ 25, 136 N.M. 309, 98 P.3d 699. The burden lies with the State to demonstrate that the error is harmless beyond a reasonable doubt. Johnson, 2004-NMSC-029, ¶ 9, 136 N.M. 348, 98 P.3d 998; Alvarez-Lopez, 2004-NMSC-030, ¶ 25, 136 N.M. 309, 98 P.3d 699. However, the State makes no argument of harmless error. Specifically, the State’s brief fails to make any assertion or argument attempting to demonstrate that there is no reasonable possibility that admitting Defendant’s statements and attempt to plead guilty into evidence contributed to his conviction. See Johnson, 2004-NMSC-029, ¶ 11, 136 N.M. 348, 98 P.3d 998 (stating the central focus in determining whether constitutional error was harmless is “whether there is a reasonable possibility the erroneous evidence might have affected the jury’s verdict”). {77} In my independent examination of the record, I cannot conclude beyond a reasonable doubt that the error in admitting this evidence was harmless. In Alvarez-Lopez, our Supreme Court noted Fulminante in which the United States Supreme Court “was faced with determining whether a criminal defendant’s involuntary confession, which was unconstitutionally admitted into evidence against him at his trial, contributed to his conviction.” Alvarez-Lopez, 2004-NMSC-030, ¶ 34, 136 N.M. 309, 98 P.3d 699. Our Supreme Court agreed that [Confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.... [A] full confession in which the defendant discloses the motive for and means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision____ [T]he risk that the confession is unreliable, coupled with the profound impact that the confession has upon the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless. Id. ¶34 (quoting Fulminante, 499 U.S. at 296, 111 S.Ct. 1246). See also United States v. Leon-Delfis, 203 F.3d 103, 112 (1st Cir. 2000) (“Confessions are by nature highly probative and likely to be at the center of the jury’s attention.”). This reasoning has even greater force where a guilty plea is concerned. As I have already noted, a judicial guilty plea has its own unique probative weight which is virtually impossible to overlook. In the words of the United States Supreme Court, “A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction.” Kercheval, 274 U.S. at 223, 47 S.Ct. 582 (emphasis added). {78} In Elizondo, the defendant was convicted of conspiracy to possess with intent to distribute, and conspiracy to distribute, cocaine in federal court. 277 F.Supp.2d at 692. The federal judge admitted into evidence the defendant’s guilty plea in state court, together with the state judgment of conviction, that he possessed the same drugs. Id. at 697. The defendant was granted a new trial after the judge concluded that he improperly admitted this evidence. Id. at 703-04. Applying Chapman, the judge found “there is a significant possibility that admission of [the defendant's state court guilty plea and conviction had a substantial impact on [the defendant's conviction on the federal conspiracy charge.” The judge first recognized that “admission of the guilty plea likely had an even greater impact on the verdict than admission of the conviction itself.” Id. at 703. The judge then went further and candidly acknowledged the effect it had upon the court itself when he denied the defendant’s motion for a directed verdict. Id. at 703-04. When he denied the defendant’s motion, the judge had said, “Well, I don’t know of a better form of demonstration of knowledge [of the drugs] than somebody pleading guilty to it.” Id. at 704. {79} Under the circumstances of this case, it is not possible to conclude that the error was harmless beyond a reasonable doubt. See Johnson, 2004-NMSC-029, ¶10, 136 N.M. 348, 98 P.3d 998 (directing that if we conclude, “there is a reasonable possibility the evidence complained of might have contributed to the conviction” after examining the admissible evidence and the possible impact of the error on that evidence, “we must reverse”). {80} Johnson and Alvarez-Lopez both teach that constitutional error cannot be deemed harmless simply because there is overwhelming evidence of a defendant’s guilt. Johnson, 2004-NMSC-029, ¶ 11, 136 N.M. 348, 98 P.3d 998; Alvarez-Lopez, 2004-NMSC-030, ¶ 32, 136 N.M. 309, 98 P.3d 699. Among the reasons given are the recognition that appellate courts are “poorly equipped” to determine guilt or innocence. Id. ¶29. Furthermore, defendants have a constitutional right to have a jury decide guilt or innocence, not appellate judges reviewing the evidence on appeal, id. ¶ 27, and we cannot take the risk that the appellate court — the wrong entity — is adjudging the defendant’s guilt. Id. ¶28. Consistent with the jury trial guarantee, the inquiry “is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” Id. ¶ 27 (internal quotation marks and citation omitted). Perhaps most compelling, “we risk inadvertently concluding that constitutional error was harmless simply because there was substantial evidence to support the conviction.” Id. ¶30. Accordingly, when constitutional error has infected a trial, a jury verdict is not automatically afforded deference. Id. “Rather, in a proper harmless error analysis, the appellate court defers to the jury verdict only when the State has established beyond a reasonable doubt that the jury verdict was not tainted by the constitutional error.” Id. {81} As a policy matter, we must be cognizant that our criminal justice system, and our federal and state constitutions, “protect other values besides the reliability of the guilt or innocence determination.” Id. ¶31 (internal quotation marks and citation omitted). A harmless error analysis which focuses solely on whether overwhelming evidence supports a guilty verdict does not adequately protect those values. Id. In this regard, I agree with the following statement from Reardon, 73 N.W.2d at 195, which answered the state’s argument that whether there was prejudice requiring a new trial when a withdrawn guilty plea was admitted into evidence was determined by whether or not the error affected the result. The state contends that whether or not there was prejudice requiring a new trial is determined by whether or not the error affected the result. There is authority for this proposition — but where the constitutional right to a fair trial is denied, we are unwilling to adopt a theory which in effect assumes that, where proof is strong, due process may be suspended---- It is true there is cogent evidence to support the verdict; and it may be expected that on a second trial the result would be the same. But to allow factually strong cases to erode such a basic right is to deny the existence of the right. Id. (citations and footnotes omitted). {82} Notwithstanding the weight of the remaining evidence against Defendant, the State has failed to demonstrate that the verdict was not tainted by the error. The majority’s attempt to demonstrate harmless error fails. Again, evidence of Defendant’s attempt to plead guilty has a unique evidentiary weight, and simply reciting what other evidence the State presented does not demonstrate harmless error. {83} Finally, I disagree with the majority conclusion that Defendant’s attempt to plead guilty was “truly” cumulative. Majority Opinion ¶ 52. Johnson states, “To the extent the evidence corroborates, and therefore strengthens, the prosecution’s evidence, it cannot be deemed ‘cumulative’ as we understand that term.” 2004-NMSC-029, ¶37, 136 N.M. 348, 98 P.3d 998. Again, given the nature and effect of a guilty plea, the improper evidence in this case not only corroborated and strengthened the State’s case, it did so beyond any reasonable doubt. Even if the evidence viewed as merely cumulative, “improperly admitted evidence that is cumulative is not ipso facto harmless beyond a reasonable doubt: the reviewing court must further inquire into the effect that evidence might have had on the jury’s verdict.” Id. In this case, it cannot be assumed that the improper evidence had no effect on the verdict in this case. CONCLUSION {84} For all the foregoing reasons, I would reverse Defendant’s conviction and remand the case for a new trial.