STATE v. A. E. REARDON.[1]

November 25, 1955.

No. 36,539.

*Hoffmann, Donahue & Graff* and *James J. Courtney & Sons,* for appellant.

*Miles Lord,* Attorney General, *James F. Lynch,* County Attorney, *John P. Frank,* Assistant County Attorney, for the State.

[1]Reported in 73 N. W. (2d) 192.

MURPHY, JUSTICE.

The defendant was indicted for first degree grand larceny under M. S. A. 622.01(2) and 622.05(3). Following conviction and imposition of sentence, the trial court denied defendant's motion for a new trial. From this order the defendant has appealed.

Since the one question for consideration is whether the defendant was denied his constitutional right to a fair trial, the facts are briefly set forth only to place the issue in context. The defendant, a realtor doing business in the city of St. Paul as the Reardon Service Bureau, sold a house for the complainant, Alva P. Broeker. The sale was consummated April 9, 1953, and on May 12, after several unsuccessful attempts to get the balance of the proceeds of the sale, Broeker and his attorney made demands therefor at the defendant's office. The defendant gave Broeker a check for the balance due on that date, the check being dishonored because of insufficient funds. The following day, May 13, 1953, Broeker and his attorney confronted the defendant with the dishonored check and again demanded the balance due. At that time defendant admitted he did not have the money, stating that he had used it to pay his own bills. The defendant offered in effect to either "go * * * to the County Attorney's office" or make restitution. Defendant agreed to make restitution and Broeker consented to accept payment in weekly installments. Thereafter the defendant made intermittent weekly payments in varying amounts until September 1953, at which time there was and still is the sum of $2,142.48 owing to Mr. Broeker.

On March 17, 1954, an information was filed in Ramsey County District Court charging the defendant with second degree grand larceny, to which information the defendant entered a plea of guilty. Thereafter on April 23, 1954, upon motion of the defendant, the Ramsey County District Court ordered the withdrawal of such plea. The present action is based on an indictment returned April 30, 1954, charging the defendant with first degree grand larceny. There has never been any plea other than a plea of not guilty to this indictment.

■ The sole point upon which the defendant predicates this appeal is that the county attorney's closing argument, by referring to a former plea of guilty, was so prejudicial that the defendant was

deprived of a fair trial and due process of law.[2] The proscribed remarks as they appear in the record of the state's closing argument are as follows:

"Mr. Reardon at the time he went to trial here, by going to trial entered a plea of not guilty to every essential element of the crime he was charged with, but there was one time when he entered a plea of guilty and he entered that plea on the morning of May 13th, 1953."

The appellant contends the foregoing statement was prejudicial and resulted in the denial of a fair trial because it informed the jury of a plea of guilty which had been withdrawn. The state contends the argument merely characterizes the evidence growing out of the negotiations on May 13, 1953, when the defendant admitted he did not have the money and would, if complainant desired, go to the county attorney's office. But in view of the vast difference between an admission and a plea of guilty it is not reasonable that an attorney would use those terms synonymously.[3] The statement of the prosecuting attorney could have no other meaning to the jury except that at one time the defendant had admitted his guilt by entering a plea of guilty. In a comparable situation in State v. Hook, 174 Minn. 590, 592, 219 N. W. 926, 927, Mr. Justice Dibell observed:

"* * * it can be said that no one familiar with court rooms could believe that the jury did not understand that a plea of guilty had been entered."

Not only is a withdrawn plea of guilty inadmissible,[4] but it is also

---

[2] As guaranteed by Minn. Const. art. 1, §§ 6 and 7; U. S. Const. Amends. V and XIV, § 1.

[3] See Kercheval v. United States, 274 U. S. 220, 223, 47 S. Ct. 582, 583, 71 L. ed. 1009, 1012, where in holding a plea of guilty inadmissible as an admission the court said: "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence."

[4] State v. Anderson, 173 Minn. 293, 217 N. W. 351. So also is an offer to plead guilty. State v. McGunn, 208 Minn. 349, 294 N. W. 208.

improper to attempt to inform the jury of such a plea in argument[5] or even by innuendo.[6]

■ The county attorney's argument was interrupted immediately following the statement in issue at which time the defendant moved for a mistrial. The record is not clear as to whether the prosecuting attorney retracted or explained the erroneous statement in the presence of the jury. The reporter's transcript does not show that he did.

After sentence the state moved to correct the record of the state's final argument to have it include the explanation that the plea of guilty mentioned by the prosecuting attorney actually referred to the defendant's admission on May 13, 1953. It was contended by the defendant, however, that this explanation was given at the bench, directed to the judge, and not in the hearing of the jury. In making his order the trial court said:

"* * * The Court does recall that such a remark, or a similar remark, was made by counsel for the State, but does not recollect whether the remark was made at the bench without the hearing of the jury or from the court room floor directed to the Court but within the hearing of the jury."

Because the record does not establish what actually happened with reference to a retraction or explanation by the prosecuting attorney, we do not pass upon the question of whether such action would have had the effect of correcting the prejudicial nature of the statement.

■ The motion for mistrial was argued in chambers and after denying it the trial court returned to the bench and informed the jury that the prosecuting attorney's reference to a plea of guilty applied to the conversation of May 13 and added:

---

[5]State v. Cater, 190 Minn. 485, 488, 252 N. W. 421, 422: "In view of the incompetence as evidence of a plea of guilty upon the trial of an accused upon a substituted plea of not guilty, it is improper that a prosecutor should attempt, in his opening statement or otherwise, to get knowledge of the withdrawn plea before the jury. Such conduct in a. proper case would be ground for reversal."

[6]State v. Hook, 174 Minn. 590, 219 N. W. 926.

"* * * Now, as I have already said to you and I will repeat to you, that is not in any sense of the word to be construed by the jury as a plea of guilty and the jury will put from its mind any such implication and disregard the statement made by counsel insofar as it refers to any part of that conversation as being a plea of guilty by the defendant. Now, you may go ahead, Mr. Frank."

The state contends that this cautionary instruction was sufficient to remove from the minds of the jury the prejudicial effect of the statement in question.

It is well recognized that mistakes occur in most trials and, where they do not substantially affect the rights of the parties, it may be expected that the trial court by proper instruction can rely upon the intelligence and restraint of a jury to disregard them.[7] Where, however, the impact of the prejudicial remark may be such as to impart to the minds of the jury substantial prejudicial evidence not properly a part of the case, it is taking too much for granted to say its effect can be removed by an instruction from the court. In his concurring opinion in Krulewitch v. United States, 336 U. S. 440, 453, 69 S. Ct. 716, 723, 93 L. ed. 790, 799, Mr. Justice Jackson said: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, * * * all practicing lawyers know to be unmitigated fiction."

The state contends that whether or not there was prejudice requiring a new trial is determined by whether or not the error affected the result. There is authority for this proposition[8]—but where the constitutional right to a fair trial is denied, we are unwilling to adopt a theory which in effect assumes that, where proof is strong, due process may be suspended. Due process as guaranteed by the Minnesota and Federal Constitutions includes within its broad protection the right of a person to be tried according to law

[7] We have held the trial court is in a better position to determine the fact of prejudice than are we and where the prejudice is not substantial the granting of a new trial is largely discretionary. State v. Soltau, 212 Minn. 20, 28, 2 N. W. (2d) 155, 160; State v. Heffelfinger, 200 Minn. 268, 271, 274 N. W. 234, 235. Cf. State v. Clark, 114 Minn. 342, 131 N. W. 369.

[8] 3 Am. Jur., Appeal and Error, § 1007.

and the evidence in the case. Holden v. Hardy, 169 U. S. 366, 18 S. Ct. 383, 42 L. ed. 780; Lowery v. State, 21 Ala. App. 352, 108 So. 351. It is true there is cogent evidence to support the verdict; and it may be expected that on a second trial the result would be the same. But to allow factually strong cases to erode such a basic right is to deny the existence of the right.[9]

While we are reluctant to reverse, the paramount consideration of maintaining the "constitutional norm"[10] requires a new trial.

The order denying a new trial is reversed.

---

[9]Mr. Justice Harlan in Boyd v. United States, 142 U. S. 450, 458, 12 S. Ct. 292, 295, 35 L. ed. 1077, 1080, discussing a conviction wherein culpability was far greater than here, stated: "However depraved in character, and however full of crime their past lives may have been, the defendants were entitled to be tried upon competent evidence, and only for the offence charged."

[10]Kotteakos v. United States, 328 U. S. 750, 764, 66 S. Ct. 1239, 1248, 90 L. ed. 1557, 1566.