Brian CAMBRIDGE,
Petitioner–Appellant,

v.

Jack DUCKWORTH and Linley E. Pearson, Respondents–Appellees.

No. 86–1327.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1987.
Decided Oct. 7, 1988.

Brian Cambridge, Waupun, Wis., pro se.

David F. Hamilton, Indianapolis, Ind., for petitioner-appellant.

Sabra A. Weliever, Atty. Gen. Office of Ind., Indianapolis, Ind., for respondents-appellees.

Before CUMMINGS, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Brian ("Benny") Cambridge appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We affirm.

## I.

In the early morning hours of June 17, 1979, Cambridge returned home to the Indianapolis, Indiana apartment he shared with Robin Jackson. Jackson was in bed feigning sleep until she opened her eyes and saw Cambridge standing by the bed. Cambridge proceeded to pin Jackson to the bed and asked her about some cigarette butts in the apartment and where she had been that night. They argued. Cambridge accused Jackson of lying and said, "I'm going to kill you." Still pinning Jackson to the bed, Cambridge reached across the bed, pulled out a gun, and pointed it at her head. Jackson turned her head and Cambridge shot her. Jackson was extremely fortunate. The bullet entered her forehead, traveled about an inch, and exited at her hairline. Jackson got away from Cambridge and locked herself in the bathroom. Cambridge left the apartment.

Cambridge then returned, telling Jackson, "Baby, I didn't mean to hurt you ... Please, don't send me back to jail ... listen to me, I hid the gun ... This is what we [are] going to tell them, somebody was trying to come in and rob through the bathroom...." Cambridge took an ashtray and broke a window to make it appear that a burglar had entered the apartment. Cambridge then told Jackson that he would take her to the hospital. A police officer arrived as they were leaving the apartment. He questioned Jackson and Cambridge. Jackson told the officer Cambridge shot her. Cambridge repeated his story about a burglar. The officer arrested Cambridge. At the scene, the police found the broken window and pieces of broken glass on the ground outside the window.

The State charged Cambridge with attempted murder. Following plea negotiations, the State agreed to drop the attempted murder charge in return for a guilty plea to battery. The State agreed to recommend an eight-year determinate sentence. Cambridge signed the agreement. Cambridge's attorney subsequently moved to withdraw the guilty plea and withdraw from the case. He stated that Cambridge

had signed the plea agreement "reluctantly" and that Jackson had visited Cambridge in jail and "allegedly told [Cambridge] that this whole case was a misunderstanding, that she did not want him to plead guilty, and that she was leaving the state and would not prosecute." The court then appointed Cambridge a new defense attorney and granted him leave to withdraw his guilty plea.

The State recharged Cambridge with attempted murder and a jury trial was held on June 9, 1980. Robin Jackson was the chief prosecution witness. Cambridge did not testify in his own defense, but rather relied upon a defense strategy of trying to create reasonable doubt about the government's case. This strategy focused primarily on attempting to discredit Robin Jackson's testimony by attempting to show that her testimony about the shooting was inconsistent with the fact that she had kept in contact with Cambridge and had visited him while he was in prison. On cross-examination, Cambridge's attorney asked Jackson how she had obtained permission to visit Cambridge and the following colloquy took place:

Q. I'm asking you if you had any special permission?

A. Yes.

Q. And, you had to do that on your own, that wasn't something Brian Cambridge could have done for you, is it?

A. No, he couldn't do it for me, but as I was trying to say, the Court case was supposed to be over, Benny had signed a Guilty Plea; and that was the only time I went down there to find out about my diamond—.

Mr. Hollander: Your honor, I would ask for the witness' statement to be struck, and ask for a mistrial, it was an answer unresponsive to the question, and elicited information not requested.

Court: We'll grant the Motion to strike the witness' answer as not responsive to the question, and the Jury is instructed to disregard the last answer;

Motion for Mistrial, overruled. You may proceed.

Cambridge's attorney subsequently introduced a letter that Jackson had written to Cambridge after her visit. The letter referred to the fact that Jackson had moved to New York and was having an affair with a married man who apparently was footing Jackson's bills. The letter stated that, "You see my friend is worried about what's going to happen if you got out. I told him nothing but I guess he feels a lack of security being that I turned him down before for you." During the course of his questioning on this matter and the jail visit, Jackson referred to Cambridge's guilty plea on two more occasions. Cambridge did not move to strike Jackson's testimony from the record or move the trial court to instruct Jackson to avoid referring to the guilty plea. In fact, Cambridge's counsel thereafter mentioned the guilty plea in his questions to Jackson.

The jury was instructed on attempted murder, battery, and criminal recklessness. The jury found Cambridge guilty of attempted murder and the court sentenced Cambridge to thirty years in prison. Cambridge appealed his conviction to the Supreme Court of Indiana, claiming that the trial court committed reversible error by denying his motion for mistrial after Jackson referred to his guilty plea. The court affirmed the conviction. *Cambridge v. State* ("*Cambridge I*"), 468 N.E.2d 1252 (Ind.1981). Cambridge brought the same issue before the Supreme Court of Indiana on appeal of the denial of a petition for post-conviction relief. The court ruled against Cambridge on this issue on the ground that the issue had already been decided against Cambridge on his direct appeal. *Cambridge v. State* ("*Cambridge II*"), 468 N.E.2d 1047, 1049 (Ind.1984). In addition, Cambridge also claimed that Jackson's subsequent, unobjected-to references to Cambridge's guilty plea also warranted overturning his conviction. The court held that any arguments regarding Jackson's unobjected-to references to the guilty plea were waived by Cambridge's failure to raise them on his direct appeal. *Id.* Cambridge then filed a petition for a writ of

habeas corpus in the United States District Court for the Northern District of Indiana. The district court denied the petition and this appeal followed.

## II.

### A. *Jackson's Original Reference To The Guilty Plea.*

██ Cambridge contends that Jackson's original reference to his guilty plea violated his Fourteenth Amendment due process right to a fair trial even though the trial court struck the testimony from the record and admonished the jury to disregard it. Cambridge first argues that it is fundamentally unfair for the State to derive the benefits from a criminal defendant's withdrawn guilty plea while depriving him of what he bargained for in exchange, a lighter prison sentence. *See, e.g., State v. Reardon,* 245 Minn. 509, 73 N.W.2d 192 (1955) (prosecutor's statement about defendant's withdrawn guilty plea deprived defendant of due process right to fair trial); *Ely v. Haugh,* 172 N.W.2d 144 (Iowa 1969) (admission of withdrawn guilty plea into evidence violated defendant's due process right to a fair trial). Cambridge argues that it is particularly unfair to allow the prosecution to use a withdrawn guilty plea against a criminal defendant where, as in Indiana, state law expressly provides that withdrawn plea agreements and statements made in plea negotiations are inadmissible at trial. See Ind.Code § 35–35–3–4 (1986).[1] According to Cambridge, an important condition of his plea agreement, and the negotiations leading up to the agreement, was that his guilty plea would not be used against him if the agreement was not consummated. The trial court's denial of his motion for mistrial after Jackson mentioned his guilty plea, Cambridge contends, violated this implicit condition under which his plea was negotiated and then later withdrawn.

Had the prosecution mentioned Cambridge's plea agreement or had the trial court admitted the plea into evidence, Cam-

bridge's argument concerning the fundamental unfairness of altering the conditions under which he agreed to plead guilty would carry considerable force. But this is simply not a case where the State lured Cambridge into a disadvantageous position and then pulled the rug out from underneath him. *See, e.g., Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (holding that it is fundamentally unfair to use post-*Miranda* warning silence against a criminal defendant because *Miranda* warnings carry an implicit assurance that the exercise of those rights will not be used against a defendant). Nor did the State violate any express or implied agreement with Cambridge. *See, e.g., Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (due process requires prosecutors to fulfill promises made in connection with a plea bargain). The prosecution did not mention the plea or in any way attempt to elicit such information. It did not even come out in response to a question from the prosecution. There is simply nothing in the record to indicate that Jackson's mention of the guilty plea was anything more than an inadvertent response from a lay witness unskilled in the rules of evidence. Moreover, upon request from defense counsel, the trial court promptly struck the response from the record and admonished the jury to disregard it. Under these circumstances, Cambridge has no basis to argue that the State treated him unfairly by attempting to retain the fruits of the plea agreement while depriving him of any of the benefits.

Although Cambridge phrases all his arguments in terms of his due process right to a fair trial, he also raises what is essentially a Fifth Amendment argument. According to Cambridge, his guilty plea constituted a conditional waiver of his Fifth Amendment privilege against compelled self-incrimination. Cambridge contends that when he withdrew his guilty plea he also withdrew his conditional waiver of the

---

1. Ind.Code § 35–35–3–4 (West 1986) provides: "A plea agreement, or a verbal or written communication concerning the plea agree-

ment, may not be admitted into evidence at the trial of the case, should the plea agreement not culminate in approval by the court."

privilege against self-incrimination. Therefore, Cambridge argues, the trial court's denial of his mistrial motion violated his Fifth Amendment privilege against compelled self-incrimination.

In making this argument, Cambridge relies heavily upon the Supreme Court's decision in *Kercheval v. United States*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), where the Court held as a matter of federal evidence law that it was improper to admit a withdrawn guilty plea as evidence against a criminal defendant. In *Kercheval*, the defendant pleaded guilty and then subsequently moved to withdraw the plea on the ground that the government unfairly induced him to plead guilty. The trial court allowed the petitioner to withdraw his plea but subsequently permitted the prosecution to place a certified copy of the withdrawn guilty plea into evidence at the defendant's trial. The Court held that this was improper, reasoning that it was inherently inconsistent for the trial court to allow the plea to be withdrawn on the ground that there was some defect in the plea and then to breathe new life into the plea by allowing the government to introduce it as evidence against the defendant.[2] As the Court explained:

> The effect of the court's order permitting the withdrawal was to adjudge that the plea of guilty be held for naught. Its subsequent use as evidence against petitioner was in direct conflict with that determination. . . . As a practical matter, it could not be received as evidence without putting petitioner in a dilemma utterly inconsistent with the determination of the court awarding him a trial.

Its introduction may have turned the scale against him.

274 U.S. at 224, 47 S.Ct. at 583.

Although *Kercheval* was decided under the Supreme Court's supervisory power over the federal courts, several courts have relied upon its reasoning in holding that a state's use of a withdrawn guilty plea violated a criminal defendant's Fifth Amendment privilege against compelled self-incrimination. In *Wood v. United States*, 128 F.2d 265 (D.C.Cir.1942), the court held that the admission of a guilty plea against criminal defendants who were unrepresented by counsel and not shown to have been aware of their rights, violated the defendants' privilege against compelled self-incrimination. While its holding rested on the fact that the pleas were not made knowingly and voluntarily, the court expressed broader Fifth Amendment concerns about the use of a withdrawn guilty plea against a criminal defendant. Judge (later Justice) Rutledge reasoned that a guilty plea is intended to waive trial and "has nothing to do with waiving immunity to giving testimony." *Id.* at 275. Because a plea is not testimonial or evidentiary in nature, a court has the right to compel a plea from an accused person in the sense that the accused person's silence will be construed as a plea of not guilty. *Id.* at 274. The fact that a plea must be entered, Judge Rutledge reasoned, should not then be misconstrued as a waiver of Fifth Amendment rights. As Judge Rutledge explained:

> The matter may be tested as follows. It would seem beyond question that in the

---

**2.** One problem with the rationale used by the Court in *Kercheval v. United States* is that its holding would only seem to apply to cases where the plea was withdrawn under circumstances where it appeared that it was unfair to hold a defendant to his plea. *See* Weinstein & Berger, *Weinstein's Evidence* ¶ 410[03] (1986). Thus, some courts reasoned that it was permissible to admit a plea if the plea was not obtained through an "unfair practice." *See, e.g.,* *United States v. Adelman*, 107 F.2d 497, 499 (2d Cir.1939). The modern rules excluding evidence of guilty pleas do not rest upon such a narrow rationale. The most prominent reason given for these rules is a practical one. Without the plea agreements (and plea bargaining lead-

ing up to these agreements), the sheer volume of criminal trials would overload the criminal justice system. As the Supreme Court noted in *Santobello v. New York*, "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). By assuring criminal defendants that withdrawn pleas and statements made in plea negotiations will not be used against them at trial, these rules have helped to facilitate this essential component of the criminal justice system. *See Weinstein's Evidence* ¶ 410[01] to [04].

testimonial stage of trial the court, of its own motion or at the prosecutor's instance, could not call the defendant to the witness stand and compel him to answer directly or indirectly the question, "Are you guilty or not guilty?" Regardless of the nature of the answer, the court would have no right to confront him with such an inquiry. His privilege is to be free from being compelled to testify in his own case. It is to have no pressure from judicial power to speak his own guilt or innocence. The court could not force him to speak as a witness from the box. Yet in a roundabout way this would happen if the plea could be admitted in evidence.... We do not think the court can use its power to elicit the plea at one stage for one purpose and then abuse it by admitting the plea as "evidence" at another and for an entirely different purpose.

128 F.2d at 274. Judge Rutledge also reasoned that the admission of such evidence would place the impartiality of a trial court into question because it would be in the position of procuring evidence for the prosecution when taking the plea and would also be sitting in judgment of its own actions when the plea is presented as evidence at trial. Finally, Judge Rutledge stated that even if pleading guilty could be considered a waiver of the Fifth Amendment privilege against self-incrimination, the "withdrawal would nullify the waiver." *Id.* at 275.

Similarly, in *United States ex rel. Spears v. Rundle,* 268 F.Supp. 691 (E.D. Pa.1967), *aff'd,* 405 F.2d 1037 (3d Cir.1969), the court held that the admission of a withdrawn guilty plea that was not knowingly or voluntarily made violated a criminal defendant's privilege against self-incrimina-

tion. Like *Wood,* the court in *Spears* rested its holding upon narrow grounds but questioned the admissibility of withdrawn guilty pleas in a broader sense. The court questioned whether the mere act of pleading guilty could also be considered a waiver of the Fifth Amendment privilege against self-incrimination. Moreover, the court noted that admitting a withdrawn guilty plea into evidence could have a coercive effect upon a defendant by making him take the witness stand for the purpose of explaining why he made the plea or else "suffering the consequences of any adverse inferences that may be drawn." 268 F.Supp. at 699. *Accord United States v. Albano,* 414 F.Supp. 67, 69 (S.D.N.Y.1976) (Fifth Amendment prohibits the use of incriminating statement that was incidental to defendant's withdrawn guilty plea).

*Wood, Spear,* and *Albano* all point out potential Fifth Amendment problems in connection with the admission of a withdrawn guilty plea as evidence even in cases where the guilty plea is not "compelled."[3] Those problems, however, are not present in this case. The State did not treat Cambridge's withdrawn guilty plea as a "waiver" of his Fifth Amendment privilege against compelled self-incrimination. It did just the opposite. As noted earlier, the prosecution did not attempt to place the plea before the jury and the trial court immediately struck Jackson's inadvertent response when requested to do so by defense counsel. Nor did the trial court or the prosecution place Cambridge in the position of being forced to choose between not testifying or explaining away a withdrawn guilty plea admitted into evidence against him. The trial court did not admit the plea into evidence.

**3.** The only substantial reason given by Cambridge's counsel for withdrawing the plea is that Cambridge was under the impression that the State had lost its case because Robin Jackson was not going to testify. Cambridge's counsel did make the conclusory assertion that Cambridge filed the plea "reluctantly." This does not make Cambridge's plea equivalent to one that is not made knowingly or voluntarily. An accused person will naturally be reluctant to sign an agreement where the prosecution is recommending an eight-year determinate sentence.

Cambridge was faced with the difficult decision whether to accept this agreement or to take the chance that the jury would find him not guilty. The downside of this determination is that if he miscalculated, he faced a much greater prison sentence than the eight years the prosecution was going to recommend. The fact that a person is reluctant to make such a difficult decision is inherent in the plea bargaining process. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Cambridge's constitutional argument really boils down to his contention that the mere mention of a withdrawn guilty plea is so damaging to a defendant's case that no curative instruction can possibly preserve a defendant's right to a fair trial. Cambridge does find support for this proposition in two decisions of the Illinois Court of Appeals that held that a witness' inadvertent reference to a defendant's withdrawn guilty plea denied a criminal defendant of his right to a fair trial under both the United States and Illinois constitutions. *See People v. Bain*, 10 Ill.App.3d 909, 295 N.E.2d 295 (1973); *People v. Haycraft*, 76 Ill.App.2d 149, 221 N.E.2d 317 (1966). Although the potentially damaging effects of a guilty plea cannot be taken lightly, we do not find *Bain* or *Haycraft* to be persuasive authority to the extent that they set forth a *per se* ruling requiring mistrial any time a guilty plea is brought to the attention of the jury.

A jury is normally presumed to disregard inadmissible evidence brought to its attention unless there is an overwhelming probability that the jury will not follow the trial court's instructions and a strong likelihood that the inadmissible evidence was devastating to the defendant. *See Greer v. Miller*, — U.S. —, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). Consistent with *Greer v. Miller*, most courts have taken a case-by-case approach to determining whether the jury's exposure to a defendant's guilty plea warrants declaring a mistrial. *See, e.g., United States v. Tesack*, 538 F.2d 1068 (4th Cir.) (holding that any error caused by admission of evidence against a co-defendant that referred to another defendant's guilty plea was harmless), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976); *United States v. Doamarel*, 567 F.Supp. 254 (D.Del.1983) (holding that even if the constitutional rights of a criminal defendant were violated by witness' inadvertent reference to defendant's withdrawn guilty plea, any error was harmless), *aff'd*, 729 F.2d 1449 (3d Cir.), *cert. denied*, 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 843 (1984). *See generally* Weinstein & Berger, *Weinstein's Evidence* ¶ 410[03] at 410–38 to 410–39 (1986) (while

deliberate interjection of plea by prosecution or trial court "would seem to be incurable ... automatic retrials should not be granted if in fact it is perfectly clear that disclosure was inadvertent and reference to the plea did not affect the verdicts").

In the present case, we do not believe that the jury was incapable of following the trial court's admonition to disregard Jackson's reference to the withdrawn guilty plea. As the Supreme Court of Indiana noted on Cambridge's first appeal, the reference to Cambridge's guilty plea was not brought to the jurors' attention by a prosecutor or other public official, such as a police officer, whose testimony might be given special weight by the jurors. More important, this is not a case where jurors were likely to use the guilty plea as a substitute for their own independent analysis of the facts. The prosecution's case was not built upon inferences derived from circumstantial evidence such that the jurors may have used the guilty plea to buttress inferences from the evidence. This case involved a single violent incident where the State's case was based upon the direct, eyewitness testimony of the victim. Jackson testified that Cambridge pinned her to the bed, told her that he was going to kill her, pointed the gun at her head, and then shot her. Jackson also testified that Cambridge contrived to make it appear that she was shot by a burglar. This testimony was essentially uncontradicted and fully consistent with the physical evidence. The jury saw Jackson's scar as well as photographs showing blood in the apartment, broken glass on the lawn outside a broken apartment window, and what appeared to be a broken ashtray inside the apartment window. The jury also heard the uncontradicted testimony of the police officer who arrived at the scene who stated that he found Jackson bleeding profusely from a head wound. He further testified that Jackson told him Cambridge had shot her while Cambridge told him that a burglar had broken into the apartment. Cambridge presented essentially no evidence to contradict these facts but rather tried to discredit Jackson's testimony because she communi-

cated with Cambridge while he was in prison and because the man with whom she was romantically involved was concerned about an ex-boyfriend getting out of prison. Neither of these lines of attack placed a significant dent in Jackson's trial testimony, particularly since her trial testimony was fully consistent with the statements she made immediately after the shooting. Given the facts of this case, it is unlikely that the jury focused on the guilty plea rather than what went on in the apartment. In any event, these same facts make clear that even if the inadvertent reference to a guilty plea could by itself constitute a constitutional violation, any error was harmless beyond a reasonable doubt.

### B. Jackson's Subsequent References To The Withdrawn Guilty Plea.

Cambridge also claims that his due process rights were violated by Jackson's subsequent references to his guilty plea. Cambridge did not, however, move to strike these subsequent references to the guilty plea. Moreover, on review of Cambridge's post-conviction petition, the Supreme Court of Indiana held that Cambridge waived any challenge to the subsequent references to his guilty plea by his failure to specifically raise the issue on his direct appeal. *Cambridge II,* 468 N.E.2d at 1049. Normally, procedural default in state court waives the issue for purposes of federal habeas corpus review unless the petitioner can show cause for the default and prejudice resulting from the default. *See Buelow v. Dickey,* 847 F.2d 420, 425 (7th Cir.1988). A narrow exception to the "cause and prejudice" standard exists for cases where there is a "fundamental miscarriage of justice" in that a constitutional violation has probably resulted in the conviction of an innocent person. *Id.* at 427.

Cambridge argues that he had "cause" for his failure to object to Jackson's subsequent references to the plea because any such objection would have been futile. We disagree. Given that the trial court struck the original reference from the record and admonished the jury to disregard the answer, Cambridge can hardly contend that any subsequent request to admonish the jury (or the witness) would have been futile. While his failure to object at trial to the subsequent mention of the guilty plea did not bar his appeal concerning the original mention of the plea, he cannot bootstrap all subsequent references to the plea, including his own counsel's, under his original objection. To do so would give Cambridge the benefit of the objection, without giving the trial court or the prosecution the opportunity to cure any problem.[4] Moreover, Cambridge raises no argument on appeal as to why we should ignore the Supreme Court of Indiana's holding that Cambridge defaulted on his objections to the subsequent references by failing to raise any objections *on his direct appeal.* Because Cambridge fails to satisfy the "cause and prejudice" standard, he is only entitled to habeas corpus relief if the subsequent references to his plea resulted in a "miscarriage of justice." In view of our earlier holdings concerning Jackson's original reference to the withdrawn plea, we find no "miscarriage of justice" based on the subsequent references to the plea.

For the reasons stated above, the decision of the district court is

AFFIRMED.

---

4. Cambridge also claims that it is understandable that his trial counsel did not move to strike subsequent references to the guilty plea because he did not want to attract undue attention to the withdrawn plea. This position is certainly reasonable. This does not, however, allow Cambridge to later complain about the trial court's handling of the trial where the trial court was certain to grant any such motion to strike.