STATE OF CONNECTICUT *v.* LEE GARY
(13448)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 31—decision released May 9, 1989

*Jon C. Blue,* former assistant public defender, with whom, on the brief, was *Joette Katz,* former public defender, for the appellant (defendant).

*Mary H. Lesser,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* assistant state's attorney, for the appellee (state).

GLASS, J. The defendant, Lee Gary, was found guilty by a jury of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).[1] He appealed to the Appellate Court from the judgment of conviction rendered on the verdict, claiming that the trial court erred (1) in denying his motion for a mistrial after the complaining witness stated in the jury's presence that the defendant previously had pleaded guilty to the crime for which he was on trial, and (2) in failing to instruct the jury that to convict him of larceny in the second degree, the state had to prove beyond a reasonable doubt that he had taken property from the person of another. We transferred the case to ourselves pursuant to Practice Book § 4023. We find no error.

The jury could reasonably have found the following facts. In the early morning of August 29, 1986, the defendant accosted the victim, Rosemary Furman, as she walked a short distance from a friend's house to her sister's house in New Haven. Furman recognized the defendant from previously having seen him in the neighborhood. The defendant asked Furman if she would have sex with him for money. Furman refused.

[1] General Statutes § 53a-123 (a) (3) provides: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

Thereafter, as they stood in front of Furman's sister's house, the defendant snatched a gold wristwatch that hung loosely from her arm, and fled. Furman gave chase, but stopped shortly after she saw the defendant's mother seated in an automobile. When the defendant's mother asked what was happening, Furman replied, "[t]hat guy just took my watch." The defendant's mother then responded, "[t]hat's my son, call the cops."

On the night of the incident, Furman's two nieces, April and Kimberly, observed Furman running down the street. In addition, Kimberly observed that Furman was chasing the defendant. After the defendant had evaded Furman's pursuit, Furman went to the New Haven police station where she identified the defendant's mug shot. A week or two after the incident, the defendant spoke to Furman's niece, April, apologized for taking the watch, and said that he would not have done so had he known that Furman was her aunt. According to April, the defendant's sister was present when the defendant apologized. The defendant repeated this statement to April during a telephone conversation approximately one month later.

On June 4, 1987, the state filed a substitute information charging the defendant with the crimes of robbery in the third degree in violation of General Statutes § 53a-136 (a),[2] and larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).[3] The

[2] General Statutes § 53a-136 (a) provides: "A person is guilty of robbery in the third degree when he commits robbery." Robbery is defined in General Statutes § 53a-133 as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[3] See footnote 1, supra.

defendant pleaded guilty to the larceny count, and the robbery count was nolled. Under the plea agreement, the defendant was to receive a ten year prison sentence suspended after six years, and five years probation. Thereafter, however, the defendant moved to withdraw his guilty plea, and on July 17, 1987, the trial court granted his motion. On July 27, 1987, the state filed a new substitute information charging the defendant with robbery in the third degree and larceny in the second degree. The defendant pleaded not guilty to the charges in the second substitute information and elected a jury trial.

The record discloses that on the first day of trial, August 4, 1987, following Furman's testimony concerning the theft of the watch, the state's attorney asked her whether she had had any conversations with the defendant subsequent to the incident. Upon Furman's affirmative response, the defendant objected on the ground that any conversations between Furman and the defendant after the date of the incident were irrelevant. The trial court excused the jury to permit the state to present an offer of proof. With the jury out of the courtroom, Furman stated that after the defendant had pleaded guilty in June, 1987, he had called her several times from jail and asked her to drop the charges and not to respond to a subpoena. The trial court overruled the defendant's objection and recalled the jury to the courtroom.

After the jury returned, the following exchange took place between the state's attorney and Furman:

"Q. Ms. Furman, subsequent to August twenty nine, nineteen eighty six have you had the opportunity to have conversations with the defendant, Mr. Gary?

"A. Yes.

"Q. Have you had telephone conversations with him?

"A. Yes.

"Q. And how did those occur?

"A. The last time that we came to court he had pleaded guilty and said he took the watch and they gave him six years."

The defendant immediately objected to Furman's statement. The trial court forthwith instructed the jury: "At this point, the injury [sic] will disregard what was just said." On the defendant's request, the trial court excused the jury, stating that "[y]ou just have to bear with us. This is usual, this is normally [sic] in a criminal case. There are things that have to be resolved in your absence." After the jury left the courtroom, the defendant moved for a mistrial on the grounds that Furman's statement irreparably prejudiced the jury, and that any curative instructions by the trial court would be futile. The court denied the defendant's motion, stating that Furman's statement was "volunteered" and nonresponsive to the state's attorney's question. Defense counsel excepted to the court's denial of his motion, and then asked the court how it intended to "handle" the situation. The trial court stated that it would reinstruct the jury upon its return to "totally disregard" Furman's statement. The court also admonished Furman to answer only the questions asked of her, and to refrain from referring to any plea of guilty or any term of incarceration.

Upon the jury's return, the trial court gave the following instructions: "Let me again make it clear to you, as the jury, there was a question asked of this witness before you were excused from the courtroom. She really did not respond to the specific question, but then she made a statement about her opinion or conclusions about some other course of conduct relating to this defendant. I have already told you that you are to totally disregard her response to the last question. And

so, therefore, you are only really to decide this case only on the basis of proper evidence that comes out in the course of this trial." Following this instruction, Furman testified that while awaiting trial the defendant had called her several times requesting her to drop the charges and to ignore any subpoena.

After the state had concluded its case on August 5, 1987, it withdrew the robbery count. The only witness presented by the defendant was the deputy warden of the Whalley Avenue Correctional Center in New Haven. He testified that each inmate is permitted only ten minutes a day in which to make telephone calls to the outside. The jury found the defendant guilty of larceny in the second degree. On August 14, 1987, the trial court sentenced him to ten years imprisonment, execution of the sentence suspended after seven years, followed by three years probation. Thereafter, the defendant filed a motion for a new trial on the ground that he was denied a fair trial because of Furman's disclosure of the prior guilty plea. The trial court denied the defendant's motion at a hearing on August 28, 1987.

I

The defendant first claims that the trial court erred in denying his motion for a mistrial after Furman remarked that the defendant had pleaded guilty to the offense for which he was on trial. He argues that Furman's statement violated Practice Book § 718 as well as the right against self-incrimination and the presumption of innocence underlying § 718. He further argues that the remark so prejudiced the jury that he could no longer receive a fair trial. Finally, he asserts that even if the prejudicial effect of such a remark could be cured by subsequent instructions, the trial court's instructions in this case were inadequate. We are not persuaded.

"A trial court should grant a motion for mistrial only where it is apparent that an occurrence during the trial has so prejudiced a party that he can no longer receive a fair trial. *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 866 (1986); *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984); *State* v. *Ubaldi,* 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). The trial court enjoys broad discretion in deciding whether a mistrial is warranted, and its decision will be reversed on appeal only if this discretion has been abused. *State* v. *Fleming,* supra; *State* v. *Nowakowski,* 188 Conn. 620, 624, 452 A.2d 938 (1982)." *State* v. *Smith,* 200 Conn. 544, 548–49, 512 A.2d 884 (1986).

The defendant first argues that the trial court's denial of his motion for a mistrial violated the mandate of Practice Book § 718. We disagree. Practice Book § 718 provides: "No evidence of the court proceedings at which a plea of guilty or nolo contendere was entered, where such plea is not accepted by the judicial authority or is later withdrawn pursuant to Sec. 719, shall be received at the trial of the case."[4] In the present case, the trial court excluded Furman's nonresponsive remark by instructing the jury totally to disregard it. Because Furman's remark was not available to the jury as "evidence" of the defendant's guilt, there was no violation of § 718. Further, because § 718 was not violated, we need not consider the defendant's argument that § 718 effectuates the rights against self-incrimination and to be presumed innocent.[5]

---

[4] In *State* v. *Carta,* 90 Conn. 79, 83, 96 A. 411 (1916), we held that evidence of a withdrawn plea of guilty was admissible "as showing conduct on the part of the accused which was inconsistent with his claim of innocence before the jury." We agree with the defendant and the state that in light of Practice Book § 718, *Carta* is no longer valid. See *Kercheval* v. *United States,* 274 U.S. 220, 47 S. Ct. 582, 71 L. Ed. 1009 (1927).

[5] The defendant relies on a number of cases from other jurisdictions for the proposition that evidence of a withdrawn guilty plea violates the right

The defendant also claims that Furman's remark had such a "devastating prejudicial impact" on the jurors' minds that any mitigating instructions by the trial court would have been unavailing. In essence, he argues that we should adopt a per se rule that the disclosure of such information to the jury requires a mistrial. We acknowledge that some jurisdictions hold that a witness' improper reference to the defendant's prior guilty plea is prejudicial beyond cure, and requires an automatic mistrial. See, e.g., *People* v. *Haycraft,* 76 Ill. App. 2d 149, 153–54, 221 N.E.2d 317 (1966); *State* v. *Boone,* 66 N.J. 38, 50, 327 A.2d 661 (1974); *State* v. *Jensen,* 74 Utah 299, 306, 279 P. 506 (1929). Other courts, however, hold expressly or implicitly that a determination whether the trial court should have granted a mistrial must be made on a case-by-case basis. See, e.g., *Cambridge* v. *Duckworth,* 859 F.2d 526, 532 (7th Cir. 1988);

against self-incrimination and the right to be presumed innocent. Many of these cases involved instances in which the trial court admitted evidence of a guilty plea. See *Heim* v. *United States,* 47 App. D.C. 485, 493, cert. denied, 247 U.S. 522, 38 S. Ct. 583, 62 L. Ed. 1247 (1918); *United States ex rel. Spears* v. *Rundle,* 268 F. Sup. 691, 699 (E.D. Pa. 1967), aff'd, 405 F.2d 1037 (3d Cir. 1969); *State* v. *Wright,* 103 Ariz. 52, 56, 436 P.2d 601 (1968); *People* v. *Quinn,* 61 Cal. 2d 551, 554–55, 393 P.2d 705, 39 Cal. Rptr. 393 (1964); *Ely* v. *Haugh,* 172 N.W.2d 144, 150 (Iowa 1969); *State* v. *Hayes,* 285 Minn. 199, 200–201, 172 N.W.2d 324 (1969); *People* v. *Spitaleri,* 9 N.Y.2d 168, 173, 173 N.E.2d 35, 212 N.Y.S.2d 53 (1961); *State* v. *Mathis,* 287 S.C. 589, 591, 340 S.E.2d 538 (1986); see also *Kercheval* v. *United States,* 274 U.S. 220, 225, 47 S. Ct. 582, 71 L. Ed. 1009 (1927) (under federal evidentiary law, it is impermissible for prosecutor to introduce evidence of withdrawn guilty plea and for court to permit jury to consider it). The remainder involve instances in which information of the guilty plea was purposefully elicited by the prosecution, or was testified to by a law enforcement officer or other official. See, e.g., *People* v. *Haycraft,* 76 Ill. App. 2d 149, 151, 221 N.E.2d 317 (1966) (testimony by probation officer); *People* v. *Street,* 288 Mich. 406, 409, 284 N.W. 926 (1939) (prosecutor elicited testimony); *State* v. *Reardon,* 245 Minn. 509, 511–12, 73 N.W.2d 192 (1955) (prosecuting attorney introduced testimony); *State* v. *Boone,* 66 N.J. 38, 41, 327 A.2d 661 (1974) (question by prosecutor); *Frantz* v. *State,* 70 Okla. Crim. App. 214, 218, 105 P.2d 561 (1940) (county attorney introduced evidence); *State* v. *Jensen,* 74 Utah 299, 302, 279 P. 506 (1929) (sheriff testified to guilty plea). These factors, however, are not present in the case before us.

*United States* v. *Sopczak,* 742 F.2d 1119, 1122–23 (8th Cir. 1984); *United States* v. *Grunsfeld,* 558 F.2d 1231, 1242 (6th Cir.), cert. denied, 434 U.S. 872, 98 S. Ct. 219, 54 L. Ed. 2d 152 (1977); *United States* v. *Tesack,* 538 F.2d 1068 (4th Cir.), cert. denied, 429 U.S. 1025, 97 S. Ct. 646, 50 L. Ed. 2d 627 (1976); *United States* v. *Doamarel,* 567 F. Sup. 254, 264 (D. Del. 1983), aff'd, 729 F.2d 1449 (3d Cir.), cert. denied, 467 U.S. 1253, 104 S. Ct. 3539, 82 L. Ed. 2d 843 (1984); *Thessen* v. *State,* 454 P.2d 341, 350 (Alaska 1969), cert. denied, 396 U.S. 1029, 90 S. Ct. 588, 24 L. Ed. 2d 525 (1970); *State* v. *Simonson,* 112 Idaho 451, 457, 732 P.2d 689 (Idaho App. 1987); *People* v. *Oliver,* 111 Mich. App. 734, 757, 314 N.W.2d 740 (1981); *Standen* v. *State,* 101 Nev. 725, 728, 710 P.2d 718 (1985); *Blankenship* v. *State,* 219 Tenn. 355, 360–61, 410 S.W.2d 159 (1966); cf. *United States* v. *Levy,* 578 F.2d 896, 902 (2d Cir. 1978).

We find more persuasive the decisions requiring a case-by-case analysis. Consequently, we decline to adopt a per se rule requiring the trial court to grant a motion for a mistrial whenever a witness improperly refers to a defendant's withdrawn guilty plea in the jury's presence. A per se mistrial requirement would be inconsistent with the well established principle that the trial court has wide discretion in determining whether a mistrial is appropriate. *State* v. *Smith,* supra, 548; *State* v. *Ubaldi,* supra, 562. The discretion accorded the trial court derives from the practical consideration that the trial court is in a far better position than a reviewing court to ascertain whether incidents occurring at trial warrant a mistrial. Further, an automatic mistrial requirement gives short shrift to the principle that, absent contrary evidence, jurors are presumed to follow the trial court's instructions. *State* v. *Boscarino,* 204 Conn. 714, 724, 529 A.2d 1260 (1987); *State* v. *Williams,* 204 Conn. 523, 534, 529 A.2d 653 (1987); *State* v. *Rouleau,* 204 Conn. 240, 254, 528

A.2d 343 (1987); *State* v. *Fritz,* 204 Conn. 156, 167,
527 A.2d 1157 (1987). As the Court of Appeals for the
Seventh Circuit observed, in a case also involving a wit-
ness's extemporaneous disclosure of the defendant's
withdrawn guilty plea, "[a] jury is normally presumed
to disregard inadmissible evidence brought to its atten-
tion unless there is an overwhelming probability that
the jury will not follow the trial court's instructions and
a strong likelihood that the inadmissible evidence was
devastating to the defendant." *Cambridge* v. *Duck-
worth,* supra, 532, citing *Greer* v. *Miller,* 483 U.S. 756,
766 n.8, 107 S. Ct. 3102, 756, 766 n.8, 97 L. Ed. 2d
618 (1987); see also *United States* v. *Grunsfeld,* supra,
1242. In light of these fundamental principles, we are
not inclined to take judicial notice that ordinary per-
sons serving as jurors are "psychologically" incapable
of disregarding such information when ordered to do
so by the trial court.[6]

Further, under the narrow circumstances of the
present case, we conclude that the trial court did not
abuse its discretion in denying the defendant's motion
for a mistrial. As noted above, this is not a case in which
the trial court admitted the defendant's guilty plea as
evidence. Cf. *Kercheval* v. *United States,* 274 U.S. 220,
225, 47 S. Ct. 582, 71 L. Ed. 1009 (1927); *United States*

---

[6] We disagree with the defendant's argument that, under *Bruton* v. *United
States,* 391 U.S. 123, 135, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), the trial
court should have declared a mistrial. In *Bruton,* the United States Supreme
Court considered whether a codefendant's confession admitted in a joint
trial violated the defendant's sixth amendment rights, even though the trial
court instructed the jury that it could not use the codefendant's confession
as evidence of the defendant's guilt. The court held that "because of the
substantial risk that the jury, despite instructions to the contrary, looked
to the incriminating extrajudicial statements in determining petitioner's
guilt, admission of [the codefendant's] confession in this joint trial violated
petitioner's right of cross-examination secured by the Confrontation Clause
of the Sixth Amendment." Id., 126. In the present case, however, the trial
court did not admit Furman's inadvertent reference to the defendant's guilty
plea for any purpose, but struck it immediately.

*ex rel. Spears* v. *Rundle,* 268 F. Sup. 691, 699 (E.D. Pa. 1967), aff'd, 405 F.2d 1037 (3d Cir.1969); *People* v. *Quinn,* 61 Cal. 2d 551, 554–55, 393 P.2d 705, 39 Cal. Rptr. 393 (1964). Nor is this a case in which the jury was exposed to information of the defendant's guilty plea through the actions of the prosecuting attorney. Cf. *State* v. *Reardon,* 245 Minn. 509, 511–12, 73 N.W.2d 192 (1955); *People* v. *Street,* 288 Mich. 406, 409, 284 N.W. 926 (1939); *State* v. *Boone,* supra, 50; *Frantz* v. *State,* 70 Okla. Crim. App. 214, 226, 105 P.2d 561 (1940). As the defendant concedes, there is no indication whatsoever that either the state or the court encouraged Furman's extemporaneous remark.[7] Further, the trial court's prompt curative instructions forcefully admonished the jury to disregard Furman's remark entirely. *Cambridge* v. *Duckworth,* supra, 529; *United States* v. *Sopczak,* supra, 1122; *Thessen* v. *State,* supra, 350. In addition, Furman was not an official, such as a lawyer, law enforcement officer or public official. Indeed, after the jury had been recalled, the court cautiously and skillfully sought to eliminate any residual prejudice by characterizing the witness's comment as opinion. "There is simply nothing in the record to indicate that [the witness's] mention of the guilty plea was anything more than an inadvertent response from a lay witness unskilled in the rules of evidence." *Cambridge* v. *Duckworth,* supra, 529. The jury therefore would not have been predisposed toward perceiving her isolated remark as especially informed or reliable.

For the reasons discussed above, we reject the defendant's argument that the trial court's second

[7] Although during the state's offer of proof Furman referred to the defendant's guilty plea, the defendant did not object to her specific reference to the plea, or call the trial court's or the state's attention to her statement. The question asked by the state's attorney when the witness was testifying before the jury concerning how her telephone conversation with the defendant had occurred was not objected to by the defendant apparently because the response concerning the defendant's guilty plea was not anticipated.

admonition to the jury exacerbated Furman's inadvertent remark by drawing further attention to the fact that it was made. Further, the record does not support the defendant's assertion that he "promptly excepted" to the trial court's proposed reinstruction to the jury to disregard Furman's comment. After the trial court excused the jury, it listened to counsel for both parties on the defendant's motion for a mistrial. The court concluded anyway that "at this point I am going to deny your request for a mistrial." Defense counsel took an exception, which the trial court noted. Defense counsel then asked how the court intended to handle the situation. The trial court stated: "When they come in, I am going to make it very clear to them that the last response was really not responsive to the specific question and they are totally to disregard it." Defense counsel interposed no objection. The state's attorney then suggested that the court instruct the witness not to refer to the guilty plea or to the defendant's incarceration. After a brief exchange between the court and Furman, the trial court asked: "Anything else?" Defense counsel responded, "If I may take an exception." From the record before us, it is unclear whether defense counsel intended this exception to apply to the denial of the motion for a mistrial or to the trial court's proposed reinstructions. Given our inability to determine the import of defense counsel's exception even after careful scrutiny, we cannot conclude that the trial court should have understood the exception to apply to the court's proposal to reinstruct the jury.

Moreover, we are satisfied that the admissible evidence of the defendant's guilt was so overwhelming that the reference to the prior plea was harmless beyond a reasonable doubt. *Cambridge* v. *Duckworth,* supra, 532; *United States* v. *Tesack,* supra; *United States* v. *Doamarel,* supra, 264; *State* v. *Simonson,* supra, 457; *Standen* v. *State,* supra, 720. Furman posi-

tively identified the defendant as having stolen her wristwatch. She had seen the defendant in the neighborhood on previous occasions and knew who he was. Further, since the watch was stolen from her person, she had the opportunity to observe him closely. Furman also identified the defendant's photograph at the police station immediately after the incident. Her identification of the defendant was corroborated by her niece Kimberly. In addition, Furman testified that the defendant had attempted on several occasions to persuade her not to testify against him. There also was evidence that the defendant had apologized for stealing the watch to Furman's niece April on two occasions. Finally, there was evidence that the defendant's mother saw and identified him as he raced away from the scene of the crime. "The prosecution's case was not built upon inferences derived from circumstantial evidence such that the jurors may have used the guilty plea to buttress inferences from the evidence." *Cambridge* v. *Duckworth,* supra, 532. We conclude, therefore, that Furman's disclosure of the guilty plea did not prejudice the defendant.[8]

## II

The defendant next claims that the trial court inadequately instructed the jury on the crime of larceny in the second degree. The defendant did not distinctly raise this claim at the trial; Practice Book § 852; but argues that it is reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), because it implicates his due process right not to be convicted except upon proof beyond a reasonable doubt of each element necessary to constitute the crime charged. See *State* v. *Gabriel,* 192 Conn. 405, 413, 473 A.2d 300 (1984).

[8] We note that after trial, the defendant moved for a new trial on the same grounds as asserted in his motion for a mistrial. The trial court denied the motion for a new trial.

The defendant was charged and tried for violating General Statutes § 53a-123 (a) (3), which provides: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and . . . (3) the property, regardless of its nature or value, is taken from the person of another." The defendant takes issue with the trial court's following instruction: "Now, I will again remind you that in this case, as I instructed you, larceny in the second degree provides that if a larceny is committed, the property, regardless of its nature or value, must be just taken from the person. So, therefore, you have heard testimony regarding what the cost of this watch was when it was purchased. But the statute specifically provides that regardless of its nature or value, the fact that it is taken from the person establishes the offense of larceny." The defendant argues that this portion of the trial court's instructions inadequately apprised the jury that the "taking" element of the crime as charged had to be proven beyond a reasonable doubt. He argues that the trial court's failure specifically to designate "taking from the person of another" as an "element" of the crime was harmful in light of the trial court's repeated instructions that the state had to prove each "element" of the crime charged.

A claim of error in jury instructions must be reviewed in the context of the charge as a whole. *State* v. *Quintana,* 209 Conn. 34, 47, 547 A.2d 534 (1988). " 'The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict.' " Id. An error of constitutional dimension in jury instructions requires reversal if it is reasonably possible that the jury was misled. Id., 50.

Based upon our review of the record, we are persuaded that the defendant's claim is utterly meritless. The record demonstrates that the trial court through-

out its charge discussed the requirement of "taking from the person of another" on several occasions, and that it did so in language that would guide the jury to a proper verdict. The trial court read § 53a-123 (a) (3) as well as the state's substitute information, both of which clearly referred to the "taking" requirement. The court then stated that "each of the following elements must be proved by the State beyond a reasonable doubt." In connection with the first element, that the defendant wrongfully took, obtained or withheld property from the owner, the trial court stated: "Taking means any wrongful taking of property away from the possession or control of the person who is entitled to that property . . . ." In connection with the second element of "intent," the court instructed the jury that "the State must prove beyond a reasonable doubt that this defendant took the property from Rosemary Furman for the purpose of keeping or using it permanently . . . or of disposing of that item . . . ." Finally, as noted above, the trial court instructed the jury that "larceny in the second degree provides that if a larceny is committed, the property . . . must be just taken from the person. . . . [T]he fact that it is taken from the person establishes the offense of larceny." In light of the trial court's instructions as a whole, we cannot conclude that the jury would have been misled by the court's failure specifically to use the word "element" in its instructions on the requirement that the property be "taken from the person of another."

There is no error.

In this opinion the other justices concurred.